## CHAMBERS v TRETTCO, INC

Docket No. 202151. Submitted June 10, 1998, at Lansing. Decided November 20, 1998, at 9:10 A.M. Leave to appeal sought.

Robyn Chambers brought an action in the Washtenaw Circuit Court against Trettco, Inc., and ADP, Inc., alleging that Trettco, her former employer, is vicariously liable under the Civil Rights Act, MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.*, for workplace sexual harassment of the plaintiff by her Trettco supervisor. The court, Donald E. Shelton, J., denied a motion by Trettco for a directed verdict and thereafter entered judgment on a jury verdict for the plaintiff. Trettco appealed.

The Court of Appeals *held*:

1. The evidence presented at trial supported a finding of hostile work environment based on several severe or pervasive acts of harassment by the supervisor.

2. An employer is subject to vicarious liability to a victimized employee for a hostile work environment created by a supervisor. When no tangible employment action is taken against the employee, the employer may raise an affirmative defense to liability or damages by showing that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior and that the employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. In this case, the jury, on the basis of ample evidence, found that Trettco failed to take prompt remedial action after it knew or should have known of the hostile work environment created by the supervisor.

3. Any error made by the trial court in instructing the jury that an employer is strictly liable if a supervisor sexually assaults or molests an employee through the exercise of supervisory power was harmless in view of the ample evidence of hostile work environment supportive of a finding of vicarious liability on the part of Trettco, and in view of the fact that the jury did not specifically find strict liability.

Affirmed.

O'CONNELL, J., dissenting, stated that vicarious liability of an employer for sexual harassment in the form of hostile work envi-

ronment requires a showing by the plaintiff that a recurring problem existed or a repetition of an offending incident was likely and the employer failed to rectify the problem upon adequate notice. In this case, a telephone conversation between the plaintiff and a Trettco regional director did not constitute actual or constructive notice of the claimed sexual harassment. The conversation did not alert the regional director that the plaintiff was being sexually harassed, but only that she had an unspecified problem at work. The plaintiff also failed to establish quid pro quo sexual harassment. Accordingly, Trettco should not be held liable for sexual harassment.

CIVIL RIGHTS — SEXUAL HARASSMENT — HOSTILE WORK ENVIRONMENT — SUPERVISORS — EMPLOYER LIABILITY.

An employer is subject to vicarious liability to a victimized employee for a hostile work environment created by a supervisor; when no tangible employment action is taken against the employee, the employer may raise an affirmative defense to liability or damages by showing that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior and that the employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise; no affirmative defense is available when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment (MCL 37.2101 *et seq.*; MSA 3.548[101] *et seq.*).

*Garris, Garris, Garris & Garris, P.C.* (by *Steven Z. Garris*), for Robyn Chambers.

*MacDonald and Goren, P.C.* (by *Cindy Rhodes Victor* and *Lawrence C. Atorthy*), for Trettco, Inc.

Before: JANSEN, P.J., and MARKEY and O'CONNELL, JJ.

JANSEN, P.J. Defendant[1] appeals as of right from a jury's verdict in favor of plaintiff in this sexual harassment case. We affirm.

---

[1] Because defendant Trettco, Inc, doing business as HDS, is the only defendant involved in this appeal, the use of the term "defendant" will refer solely to Trettco.

Defendant, a corporation engaged in managing food service operations for various businesses, hired plaintiff as a temporary cook in June 1995, intending to use plaintiff in various locations pending possible placement in a permanent position. Defendant initially assigned plaintiff to take the place of a cook at ADP, Inc., in Ann Arbor. During this assignment, while the regular on-site supervisor was on vacation, defendant assigned a temporary supervisor, Paul Wolshon. According to the evidence at trial, Wolshon immediately commenced a pattern of sexually harassing plaintiff. Plaintiff filed suit against defendant, alleging assault, sexual assault, sexual harassment, and retaliatory discharge. Plaintiff agreed to dismiss her claims of assault and sexual assault at the close of her proofs at trial, and she withdrew her claim of retaliatory discharge before closing argument. The jury found in plaintiff's favor with respect to her claim of sexual harassment.

This appeal essentially concerns an employer's vicarious liability (respondeat superior) in a sexual harassment case brought under the Civil Rights Act, MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.* The arguments made by the employer in this case have been squarely rejected by the United States Supreme Court in *Burlington Industries, Inc v Ellerth*, 524 US 742; 118 S Ct 2257; 141 L Ed 2d 633 (1998), and *Faragher v Boca Raton*, 524 US ___; 118 S Ct 2275; 141 L Ed 2d 662 (1998).[2] The Supreme Court held that the labels "quid pro quo" and "hostile work environ-

---

[2] Our Supreme Court has noted that "[o]ur courts have consistently relied on the federal judiciary for guidance when addressing the Michigan Civil Rights Act." *Koester v Novi*, 458 Mich 1, 11-12; 580 NW2d 835 (1998).

ment" are not controlling for purposes of establishing employer liability. *Ellerth, supra*, 141 L Ed 2d 648, 655. However, for any sexual harassment preceding the employment decision to be actionable, the conduct must be severe or pervasive. *Id.*, p 648. Further, an employer can be liable for a supervisor's sexual harassment where the employer's own negligence is a cause of the harassment. *Id.*, p 651. An employer is negligent with respect to sexual harassment if it knew or should have known about the conduct and failed to stop it. *Id.*

First, defendant's claim that plaintiff failed to establish a claim of sexual harassment in the form of hostile work environment is meritless.[3] During a one-week period in July 1995, Paul Wolshon, a "float manager" (but not plaintiff's full-time manager) engaged in numerous incidents of sexually harassing plaintiff. There was evidence that Wolshon rubbed plaintiff's buttocks, grabbed her breasts, asked plaintiff to go to a hotel and have oral sex with him, and rubbed whipped cream on plaintiff's hands and stated, "Now tell everybody you were creamed by Paul." One of plaintiff's co-workers also testified that Wolshon stated that he would like to put whipped cream on his tongue and put it between plaintiff's legs and lick plaintiff's breasts. The same co-worker also saw Wolshon grab plaintiff's breasts. Plaintiff also testified

---

[3] Moreover, to the extent that defendant argues that plaintiff failed to establish a prima facie case of quid pro quo sexual harassment, we need not address that claim because the Supreme Court has made clear that the labels "quid pro quo" and "hostile work environment" are not controlling for purposes of establishing employer liability. Thus, we only address whether Wolshon's conduct was severe or pervasive enough to be actionable.

that these types of harassing incidents occurred every day of the week that Wolshon was her supervisor.

Defendant's claim that plaintiff's allegations are "a discrete, singular set of occurrences" that were not sufficiently outrageous to form a single incident of hostile work environment is incorrect and meritless. The evidence proffered by plaintiff was clearly sufficient to establish a hostile work environment claim of sexual harassment because it was severe or pervasive. Therefore, the jury's finding that Wolshon sexually assaulted or molested plaintiff through the use of his supervisory powers over her is entirely supportable by the evidence presented. Accordingly, the trial court did not err in denying defendant's motion for a directed verdict on this basis.

Further, defendant's claims that the terms of plaintiff's employment were not affected by her rejection of Wolshon's overtures and that plaintiff did not believe that any terms of her employment would be affected by accepting or rejecting the sexual overtures are likewise without merit. Plaintiff was discharged from her position on September 11, 1995. Defendant claimed that she was discharged because of her failure to arrive for work or call regarding her absence. Plaintiff claimed that she was never told why she was discharged. Even if the discharge was not related to the sexual harassment incidents, the terms of plaintiff's employment were clearly affected; that is, Wolshon's harassment toward her was severe or pervasive and created an intimidating, hostile, or offensive work environment. *Id.*, p 648; *Faragher, supra*, 141 L Ed 2d 675; *Harris v Forklift Systems, Inc*, 510 US 17, 21; 114 S Ct 367; 126 L Ed 2d 295 (1993); *Radtke v Everett*, 442 Mich 368, 382-383; 501

NW2d 155 (1993). It is not necessary that a plaintiff suffer economic harm or tangible discrimination. *Harris, supra,* p 21.

All that was necessary was that plaintiff show that the supervisor created a hostile work environment, which the evidence at trial showed that she did. Thus, we turn to the question of the employer's vicarious liability.

With respect to the question of vicarious liability, the Supreme Court held:

> An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence . . . . The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. . . . No affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment. [*Ellerth, supra,* 141 L Ed 2d 655; *Faragher, supra,* 141 L Ed 2d 689.]

In the present case, the jury found that defendant failed to take prompt remedial action after it knew or should have known that plaintiff had been sexually harassed. This finding is supportable by the evidence presented at trial. Plaintiff testified that she spoke to Kevin McLaughlin, the regional director of operations for HDS, on the telephone on July 6, 1995. McLaughlin asked plaintiff if something was wrong, and

McLaughlin testified that he could sense that something was bothering plaintiff. Plaintiff indicated that she could not express her complaints of Wolshon at that time because Wolshon was standing next to her. McLaughlin told plaintiff that he would be at ADP, Inc., on July 8, 1995, and would speak to her at that time. It is disputed whether McLaughlin went there on July 8. He testified that he went there, but plaintiff made no attempt to talk to him. However, plaintiff testified that McLaughlin never went to ADP that week.

When plaintiff's regular supervisor, Jennifer Hostutler, returned to work on July 11, 1995, plaintiff reported her specific complaints regarding Wolshon. Hostutler asked plaintiff to write down her allegations, which plaintiff did. Plaintiff also testified that she spoke to McLaughlin, who told her that he would investigate the matter. Plaintiff testified that McLaughlin never asked her what happened regarding Wolshon and that no one from HDS ever contacted her or informed her of any results of the investigation.

In reviewing the evidence and all legitimate inferences drawn from the evidence in a light most favorable to plaintiff, *Mason v Royal Dequindre, Inc*, 455 Mich 391, 397; 566 NW2d 199 (1997), plaintiff has satisfied the requirements of *Ellerth* and *Faragher*. That is, defendant is subject to vicarious liability for an actionable hostile environment created by Wolshon, plaintiff's immediate supervisor. Assuming that plaintiff was not discharged for reporting Wolshon's actions, although there is no tangible employment action, defendant may raise the affirmative defense that it exercised reasonable care to prevent and cor-

rect promptly any sexually harassing behavior and that plaintiff failed to take advantage of any preventive or corrective opportunities provided by defendant or to otherwise avoid harm. Here, the jury could have, and apparently did, reject McLaughlin's testimony and accept plaintiff's testimony regarding defendant's attempts to prevent or correct Wolshon's sexually harassing behavior. Accordingly, the jury could reasonably infer that defendant was vicariously liable for Wolshon's sexually harassing behavior because defendant failed to exercise reasonable care to prevent and correct promptly Wolshon's behavior.

The facts of the present case are as compelling as those in *Ellerth* or *Faragher* to support a finding in favor of the plaintiff. In *Ellerth*, the plaintiff did not allege that she suffered a tangible employment action at the hands of her supervisor, but the Supreme Court held that this was not dispositive. Rather, the employer is still subject to vicarious liability for the supervisor's activity, but the employer has the opportunity to assert and prove the affirmative defense to liability. *Ellerth, supra,* p 655. In *Ellerth*, the plaintiff clearly alleged that she was subjected to a hostile work environment created by the supervisor, but she did not inform anyone in authority about the supervisor's conduct, despite knowing that the employer had a policy against sexual harassment. *Id.,* p 645. Summary judgment against the plaintiff was reversed, and the district court was given the opportunity to decide whether to allow the plaintiff to amend her pleadings or supplement discovery.

Similarly, in *Faragher*, the plaintiff was subjected to a hostile work environment created by two supervisors, and the plaintiff reported the behavior to

another supervisor, who took no action against the other two supervisors. Further, the employer failed to disseminate its policy against sexual harassment among its employees and its officials made no attempt to keep track of the conduct of supervisors, such as the two involved in this case. The employer also failed to include any assurance that the harassing supervisors could be bypassed in registering complaints. *Faragher, supra,* p 689. The Supreme Court held, as a matter of law, that, under those circumstances, the defendant could not be found to have exercised reasonable care to prevent the supervisors' conduct *Id.,* p 690. Therefore, the district court's judgment in favor of the plaintiff was reinstated by the Supreme Court.

Accordingly, the trial court did not err in denying defendant's motion for a directed verdict on the basis of respondeat superior. The jury could properly find that defendant was vicariously liable for the acts of its supervisor.

Finally, defendant argues that the trial court's instruction to the jury that an employer is strictly liable if a supervisor sexually assaults or molests an employee through the exercise of his supervisory powers was erroneous. We find that any error in the trial court's instruction regarding strict liability was harmless, MCR 2.613(A), because there is ample evidence of a hostile work environment sufficient to establish defendant's vicarious liability, and the jury specifically found that defendant failed to take prompt remedial action after it knew or should have known that plaintiff had been sexually harassed, a finding that is supported by the evidence presented at

trial. Moreover, there was no specific finding by the jury that defendant was strictly liable.

Affirmed.

MARKEY, J., concurred.

O'CONNELL, J. (*dissenting*). I respectfully dissent. A prima facie case of hostile-workplace sexual harassment under the Civil Rights Act, MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.*, includes among its requirements that the plaintiff show that the employer bears responsibility for the alleged harassment under the doctrine of respondeat superior, which ordinarily requires a showing that either a recurring problem existed or a repetition of an offending incident was likely and that the employer failed to rectify the problem upon adequate notice. *Radtke v Everett*, 442 Mich 368, 382, 395; 501 NW2d 155 (1993). Plaintiff in the instant case has failed to satisfy this requirement.

An employer has a duty to investigate and take remedial action in response to a claim of sexual harassment only upon actual or constructive notice of the offensive environment. *Downer v Detroit Receiving Hosp*, 191 Mich App 232, 235; 477 NW2d 146 (1991). In denying the motion for a directed verdict, the trial court stated that the jury could reasonably conclude that plaintiff communicated to the regional director of operations that there was a problem and that the latter failed to respond as promised, and that those conclusions could support a finding that the employer sanctioned a continuing hostile environment. However, I conclude that plaintiff's general indication to the regional director over the telephone that something was wrong did not sufficiently alert him to the problem as to constitute actual or con-

structive notice on defendant's part that sexual har-
assment was taking place. It is not reasonable to infer
from the regional director's vague understanding that
something was amiss that he had notice of sexual
harassment.[1] Because plaintiff presented no evidence
that she complained about the problem to anyone

---

[1] The facts of this case are as follows:

Defendant, a corporation engaged in managing food service oper-
ations for various businesses, hired plaintiff as a temporary cook in
June 1995, intending to use plaintiff in various locations pending
possible placement in a permanent position. Defendant initially
assigned plaintiff to take the place of a cook at one location. Dur-
ing this assignment, while the regular on-site supervisor was on
vacation, defendant assigned a temporary supervisor. According to
the evidence, this temporary supervisor immediately commenced a
pattern of harassing plaintiff. The temporary supervisor allegedly
rubbed plaintiff's buttocks, grabbed her breasts, and made various
verbal innuendoes, including asking her to join him in a hotel room
for sex. The temporary supervisor persisted in this behavior
despite plaintiff's resistance. Plaintiff complained to co-workers
that she wished to quit her job, but the co-workers encouraged her
to stay. During this time, plaintiff indicated on the telephone to
defendant's regional director of operations that something was
wrong. However, because the offending supervisor was nearby,
plaintiff did not feel at liberty to describe the problem. The regional
director said he would come to the location to talk to plaintiff, but
no meeting between plaintiff and the director followed. Plaintiff
neither initiated that conversation nor attempted to contact the
person listed in her employee handbook for fielding complaints of
sexual harassment.

Plaintiff reported the pattern of harassment to her regular super-
visor upon the supervisor's return from vacation and was
instructed to put her allegations in writing. Plaintiff complied, and
the regional director said he would investigate the complaint. Plain-
tiff never saw the offending person again and the lower court
record is devoid of what, if any, action defendant took against the
offending temporary supervisor.

When the cook plaintiff had been replacing returned from sick
leave, plaintiff was transferred to other locations that defendant
served. After several weeks defendant terminated plaintiff's
employment, citing her failure to report to work. Plaintiff testified
that she had stopped receiving assignments and that defendant
failed to return her calls.

with supervisory responsibility before she spoke to her normal supervisor upon the latter's return and the offender's departure, or that anyone with authority to act otherwise had notice that sexual harassment was taking place, the facts as plaintiff alleges them simply did not trigger defendant's duty to take action to alleviate the problem. Further, because the offender was no longer situated at plaintiff's work location when defendant did learn of a sexual harassment complaint, defendant breached no duty to take remedial action as regarded plaintiff once defendant had notice of a complaint.

Plaintiff likewise failed to establish a prima facie case of quid pro quo sexual harassment. The Civil Rights Act provides that discrimination on the basis of sex includes where the employee's submission to or rejection of sexual overtures "is used as a factor in decisions affecting such individual's employment . . . ." MCL 37.2103(i)(ii);  MSA 3.548(103)(i)(ii).  A party pressing a claim under this provision must establish that the party was the subject of unwanted sexual conduct or communication and that the employer used the party's submission to or rejection of the improper conduct as a factor in a decision affecting the party's employment. *Champion v Nation Wide Security, Inc*, 450 Mich 702, 708-709; 545 NW2d 596 (1996).  In the instant case, plaintiff has failed to show that any terms or conditions of her employment were affected by her rejection of the temporary supervisor's advances.[2]

---

[2] The majority finds it significant that defendant eventually terminated her employment. However, because plaintiff withdrew her claim of retaliatory discharge, and does not argue on appeal that her subsequent termination by defendant was related to her allegations of harassment, defend-

Plaintiff does not allege that the temporary supervisor ever suggested that plaintiff's job would be affected, for better or worse, by her response to his overtures. Instead, plaintiff argues that the supervisor's continuing harassment was itself in response to plaintiff's initial rejection of his advances, that continuing pattern then being a decision affecting her employment for purposes of her quid pro quo claim.

Plaintiff relies on *Champion*, where a security guard was raped by her supervisor. Following a pattern of unwanted sexual innuendoes, the supervisor called the guard at home and asked her to come to work for an unscheduled shift on a Saturday. *Id.* at 705. The supervisor had dismissed all other security personnel. *Id.* at 706. After business hours, with only the two of them on the premises, the supervisor ordered the guard into a remotely situated room, locked the door, demanded sex from the guard, then raped her when she refused to cooperate. *Id.* The guard chose never to report to work for that employer again. Our Supreme Court held that the decision to rape was, in effect, a decision to effect a constructive discharge. *Id.* at 711. The Court further held that such behavior, whether or not the employee resigns, constitutes a decision affecting the plaintiff's employment in response to her refusal to submit to the supervisor's sexual requests. *Id.* at 711, n 5. The Court declared, "we hold an employer strictly liable where the supervisor accomplishes the rape through

---

ant's termination of plaintiff's employment may not properly be regarded as evidence of a change in plaintiff's circumstances of employment for purposes of substantiating plaintiff's sexual harassment claim.

the exercise of his supervisory power over the victim." *Id.* at 713-714.

The Court tailored the above rule closely to the facts at hand. The facts of the instant case are not nearly as compelling as those in *Champion*. Plaintiff complained that the temporary supervisor offended her with sexual commentary and by grabbing her breasts and rubbing her buttocks, all this during the four work days of the offender's temporary supervisory assignment. However, there is no evidence, beyond plaintiff's assertion, that the offending supervisor continued his inappropriate behavior in response to plaintiff's initial rejection of his advances. Although plaintiff's allegations are serious and represent highly offensive and inappropriate conduct, the behavior alleged falls far short of the violence and outrageousness described in *Champion*. Plaintiff has failed to offer evidence that her circumstances of employment were affected by her response to the unwanted sexual provocation or that she endured the harassment under threat of adverse consequences.

The majority opinion emphasizes the offensive nature of the acts allegedly committed by plaintiff's temporary supervisor. I agree with the majority opinion that the alleged misconduct is both offensive and harmful. Such behavior is always actionable against the offender, but here plaintiff has chosen instead to commence suit against the offender's employer. Because an employer's duty to take action exists only where the employer had actual or constructive notice of the offending behavior, *Downer*, *supra*, plaintiff has failed to set forth a prima facie case against defendant. Plaintiff provided defendant with no specific notice of the offensive conduct while it was

occurring. The only indication a person in a position of authority received during that four-day pattern of misconduct was plaintiff's indistinct indication to the regional manager that something was amiss when the regional manager happened to reach plaintiff on the telephone. Imputing notice of sexual harassment to an employer on the basis of such nebulous implications would have the effect of making an employer an insurer of an employee's personal anguish of which the employer had little or no understanding. Rendering employers vulnerable to liability under such circumstances would be poor public policy. Accordingly, I do not share the majority's eagerness to regard the regional manager's vague understanding that plaintiff was unhappy about something as triggering defendant's duty to take action. Nor do I join the majority in characterizing the four-day period of offensive behavior by a temporary supervisor as a pervasive condition of employment instead of an isolated set of circumstances. While the record suggests that the temporary supervisor engaged in egregious and actionable conduct, imputing liability to defendant under these facts would be contrary to both the letter of the law and the interests of justice.

For these reasons, I would remand this case to the trial court with instructions to enter judgment in favor of defendant.