CHAMBERS v TRETTCO, INC (ON REMAND)

Docket No. 202151. Submitted September 5, 2000, at Lansing. Decided
February 16, 2001, at 9:05 A.M.

Robyn Chambers brought an action in the Washtenaw Circuit Court
against her employer, Trettco, Inc., claiming sex discrimination in
employment, involving sexual harassment. The court, Donald E.
Shelton, J., submitted the case to a jury on theories of quid pro quo
sexual harassment and hostile work environment sexual harass-
ment. The jury returned a verdict for the plaintiff. The Court of
Appeals, JANSEN, P.J., and MARKEY, J. (O'CONNELL, J., dissenting),
affirmed on the basis of *Faragher v Boca Raton*, 524 US 775 (1998),
and *Burlington Industries, Inc v Ellerth*, 524 US 742 (1998), which
had applied the federal Civil Rights Act. 232 Mich App 560 (1998).
The defendant appealed, and the Supreme Court held that the reli-
ance on federal case law by the Court of Appeals was misplaced,
dismissed the plaintiff's claim of quid pro quo sexual harassment,
vacated the prior opinion of the Court of Appeals, and remanded
the matter to the Court of Appeals for resolution of the claim of
hostile work environment sexual harassment in accordance with
Michigan precedents.

On remand, the Court of Appeals *held*:

Reversed and remanded.

O'CONNELL, J., in the lead opinion, stated:

1. The Michigan Civil Rights Act, MCL 37.2101 *et seq.*; MSA
3.548(101) *et seq.*, expressly recognizes sexual harassment as a pro-
hibited form of discrimination and carefully distinguishes between
what are commonly labeled quid pro quo sexual harassment and
hostile work environment sexual harassment. The federal Civil
Rights Act, 42 USC 2000e *et seq.*, does neither, but merely prohibits
discrimination based on sex.

2. The United States Supreme Court has concluded that, under
the federal Civil Rights Act, once a plaintiff has established that a
supervisor created a hostile working environment, the burden
shifts to the employer to disprove vicarious liability for the supervi-
sor's actions.

3. Under the Michigan Civil Rights Act, a defendant employer
does not bear the burden of disproving responsibility for a hostile

work environment. Rather, the plaintiff employee must prove respondeat superior by a preponderance of the evidence. This ordinarily requires a showing that either a recurring problem existed or a repetition of an offending incident was likely and that the defendant failed to rectify the problem on adequate notice. Notice of sexual harassment sufficient to impute liability to the employer exists where, by an objective standard, the totality of the circumstances were such that a reasonable employer would have been aware of the substantial probability that sexual harassment was occurring.

4. The plaintiff failed to prove respondeat superior by a preponderance of the evidence. The trial court's judgment must be reversed and the matter must be remanded for entry of a judgment in favor of the defendant.

MARKEY, J., concurred in the result only.

JANSEN, P.J., dissenting, stated that there was sufficient evidence presented at trial for the jury to conclude that the defendant failed to take prompt remedial action after it knew or should have known that the plaintiff had been sexually harassed. The judgment of the trial court should be affirmed.

*Garris, Garris, Garris & Garris, P.C.* (by *Steven Z. Garris*), for the plaintiff.

*MacDonald and Goren, P.C.* (by *Cindy Rhodes Victor* and *Lawrence C. Atorthy*), for the defendant.

ON REMAND

Before: JANSEN, P.J., and MARKEY and O'CONNELL, JJ.

O'CONNELL, J. This case returns to this Court on remand from our Supreme Court. Because the facts are set forth in detail in our earlier opinion, *Chambers v Trettco, Inc,* 232 Mich App 560, 562-564; 591 NW2d 413 (1998) (*Chambers I*), and in the Supreme Court's decision that vacated our prior opinion and remanded the matter, *Chambers v Trettco, Inc,* 463 Mich 297, 303-306; 614 NW2d 910 (2000) (*Chambers*

*II*), we will repeat them here only as necessary to bring the issues into focus.

Plaintiff brought a claim of sexual harassment against defendant, her employer, under the Civil Rights Act, MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.*, alleging both quid pro quo harassment and hostile workplace harassment. The jury accepted both theories and awarded damages. A divided panel of this Court, relying heavily on recent federal cases construing title VII of the federal Civil Rights Act, 42 USC 2000e *et seq.*, affirmed. Our Supreme Court in turn held that this Court's reliance on the federal case law was misplaced, *Chambers II, supra* at 313-316, dismissed plaintiff's claim of quid pro quo harassment, and vacated our prior opinion and remanded the case to this Court for resolution of the hostile environment harassment claim in accordance with Michigan precedents. *Id.* at 326. We reverse and remand.

Plaintiff alleged that a temporary supervisor, assigned to her work station for four days while her regular supervisor was on vacation, engaged in a pattern of seriously suggestive and offensive behavior, and did so over plaintiff's clear objections. Plaintiff complained to co-workers about wishing to leave her job, but she did not initiate the proceedings for sexual harassment complaints set forth in defendant's employee handbook. However, plaintiff happened to answer the telephone when defendant's regional director of operations telephoned. The latter sensed that something was wrong, but plaintiff chose not to explain the problem, apparently because the offender was nearby. The director indicated that he would talk to plaintiff later, but no meeting between plaintiff and

the director followed. Plaintiff did complain to her regular supervisor when the latter returned from vacation. The record does not indicate what action, if any, defendant took against the offender in response, but the offender never confronted plaintiff at work again.

Section 202 of our Civil Rights Act provides that an employer may not "discharge, or otherwise discriminate against an individual with respect to employment, . . . because of . . . sex, . . . or marital status." MCL 37.2202; MSA 3.548(202). Subsection 103(i) clarifies that "[d]iscrimination because of sex includes sexual harassment," which the subsection defines as "unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct or communication of a sexual nature," under certain circumstances. MCL 37.2103; MSA 3.548(103)(i). Qualifying circumstances include, under subsection 103(i)(*ii*), where the employee's submission to or rejection of sexual overtures "is used as a factor in decisions affecting the individual's employment," and, under subsection 103(i)(*iii*), where "[t]he conduct or communication has the purpose or effect of substantially interfering with an individual's employment, . . . or creating an intimidating, hostile, or offensive employment . . . environment." MCL 37.2103(i)(*ii*) and (*iii*); MSA 3.548(103)(i)(*ii*) and (*iii*).

Our statute thus expressly recognizes sexual harassment as a prohibited form of discrimination and carefully distinguishes between what are commonly labeled "quid pro quo" harassment and "hostile environment" harassment. The federal Civil Rights Act does neither, but merely prohibits discrimination based on sex. *Chambers II, supra* at 315, citing 42

USC 2000e-2(a)(1). Further, the United States
Supreme Court has concluded that, under the federal
Civil Rights Act, once a plaintiff has established that a
supervisor created a hostile working environment, the
burden shifts to the employer to disprove vicarious
liability for the supervisor's actions. *Chambers II,
supra* at 314-315, citing *Burlington Industries, Inc v
Ellerth,* 524 US 742, 765; 118 S Ct 2257; 141 L Ed 2d
633 (1998), and *Faragher v Boca Raton,* 524 US 775,
807; 118 S Ct 2275; 141 L Ed 2d 662 (1998). Con-
versely, under state law, vicarious liability will be
found only where the plaintiff has carried the burden
of proving respondeat superior. This ordinarily
requires a showing that either a recurring problem
existed or a repetition of an offending incident was
likely and that the employer failed to rectify the prob-
lem on adequate notice. *Radtke v Everett,* 442 Mich
368, 382, 395; 501 NW2d 155 (1993). Notice of sexual
harassment sufficient to impute liability to the
employer exists where, "by an objective standard, the
totality of the circumstances were such that a reason-
able employer would have been aware of the substan-
tial probability that sexual harassment was occur-
ring." *Chambers II, supra* at 319.

In light of our Supreme Court's opinion directing us
to apply only Michigan precedents, we now conclude
that the facts as plaintiff alleged them cannot render
defendant in this case vicariously liable for its tempo-
rary supervisor's conduct in establishing a hostile
working environment. Plaintiff's general indication to
defendant's regional director over the telephone that
something was wrong did not sufficiently alert him to
the problem to the extent that the director, and thus
defendant, could reasonably be charged with actual

or constructive notice that sexual harassment was taking place. Nor did the evidence otherwise indicate that anyone with supervisory responsibility knew of plaintiff's four-day plight until she spoke with her normal supervisor after the offending temporary supervisor was no longer visiting plaintiff's workplace. As the dissent accompanying our earlier decision in this case stated, "Imputing notice of sexual harassment to an employer on the basis of such nebulous implications would have the effect of making an employer an insurer of an employee's personal anguish of which the employer had little or no understanding." *Chambers I, supra* at 574. Again, we are reminded that under our Civil Rights Act, a defendant does not bear the burden of disproving responsibility for a hostile environment. Rather, the plaintiff must prove respondeat superior by a preponderance of the evidence. *Chambers II, supra* at 311-313, 316, citing *Radtke, supra* at 382-383, 396-397.

For these reasons, we reverse and remand this case to the trial court with instructions to enter a judgment in favor of defendant.

Reversed and remanded. We do not retain jurisdiction.

MARKEY, J. I concur in the result only.

JANSEN, P.J. (*dissenting*). I respectfully dissent and would again affirm the jury's verdict. This is a sexual harassment case in which plaintiff, a cook for defendant, was sexually harassed by Paul Wolshon, a floating supervisor, while he was supervising at defendant's facility in Ann Arbor in July 1995. Following a jury trial, the jury specially found that Wolshon sexually assaulted or molested plaintiff through the use of

his supervisory powers and that defendant failed to take prompt remedial action after it knew or should have known that plaintiff had been sexually harassed. The jury awarded damages totaling $150,000.

This Court initially affirmed,[1] with Judge O'Connell dissenting, and the Supreme Court, 463 Mich 297; 614 NW2d 910 (2000), vacated our decision, which had applied the United States Supreme Court's rulings in *Burlington Industries, Inc v Ellerth*, 524 US 742; 118 S Ct 2257; 141 L Ed 2d 633 (1998), and *Faragher v Boca Raton*, 524 US 775; 118 S Ct 2275; 141 L Ed 2d 662 (1998), both concerning an employer's vicarious liability in a sexual harassment case brought under title VII of the federal Civil Rights Act.[2] Our Supreme Court, in ordering the matter remanded to this Court decided that application of *Ellerth* and *Faragher* was erroneous and that an employer's vicarious liability in cases brought under the Michigan Civil Rights Act, MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.*, must instead be analyzed under *Radtke v Everett*, 442 Mich 368; 501 NW2d 155 (1993).[3]

According to our Supreme Court, the "central question to be addressed on remand is whether plaintiff presented sufficient evidence to demonstrate that

---

[1] *Chambers v Trettco, Inc*, 232 Mich App 560; 591 NW2d 413 (1998).

[2] See 42 USC 2000e *et seq.*

[3] Interestingly, while our Supreme Court stated that we "erroneously failed to apply controlling Michigan legal principles regarding sexual harassment claims brought under Michigan law, and instead applied the federal principles announced in *Faragher* and *Ellerth*," *Chambers, supra*, 463 Mich 318, the Court in *Radtke, supra* at 397, relied exclusively on federal cases, *Katz v Dole*, 709 F2d 251 (CA 4, 1983), and *Henson v Dundee*, 682 F2d 897 (CA 11, 1982), in determining that an employer must have notice of the alleged harassment before being held liable for not implementing action. The United States Supreme Court in *Faragher* and *Ellerth* did not follow the notice principles set forth in *Katz* and *Henson*.

defendant 'failed to rectify a problem after adequate notice.' " *Chambers, supra,* 463 Mich 318-319, quoting *Radtke, supra* at 395. The Court further stated that "notice of sexual harassment is adequate if, by an objective standard, the totality of the circumstances were such that a reasonable employer would have been aware of a substantial probability that sexual harassment was occurring." *Chambers, supra* at 319. With regard to rectifying the problem, the Court stated that "the relevant inquiry concerning the adequacy of the employer's remedial action is whether the action reasonably served to prevent future harassment of the plaintiff." *Id.*

The issue of vicarious liability was preserved by defendant when it moved for a directed verdict at the close of plaintiff's proofs. A trial court's ruling on a motion for a directed verdict is reviewed de novo. *Meagher v Wayne State Univ,* 222 Mich App 700, 708; 565 NW2d 401 (1997). When reviewing a motion for a directed verdict, the evidence and all reasonable inferences from that evidence are reviewed in a light most favorable to the nonmoving party. *Kubczak v Chemical Bank & Trust Co,* 456 Mich 653, 663; 575 NW2d 745 (1998). Directed verdicts are appropriate only when no factual question exists on which reasonable minds could differ. *Brisboy v Fibreboard Corp,* 429 Mich 540, 549; 418 NW2d 650 (1988).

As found in our previous opinion, I believe that, taken in a light most favorable to plaintiff, there was sufficient evidence presented at trial for the jury to conclude that defendant failed to take prompt remedial action after it knew or should have known that plaintiff had been sexually harassed. The evidence adduced at trial shows that plaintiff began working

for defendant in June 1995 for $7.50 an hour as a
cook. Plaintiff was assigned to work at ADP, Inc.,
while the previous cook was on medical leave. Plain-
tiff's regular supervisor was Jennifer Hostutler, who
went on vacation for the week of July 5 to 8, 1995.
During that week, Hostutler was replaced by Paul
Wolshon, an employee of defendant and a floating
supervisor. Upon becoming the acting supervisor,
Wolshon immediately began sexually harassing plain-
tiff. Wolshon's conduct was described in detail by
plaintiff and her co-worker, Russell Cade, a dish-
washer and preparatory cook.

Plaintiff testified that she spoke with Kevin
McLaughlin, the regional director of operations, on
the telephone, she believed on Wednesday, July 6.
McLaughlin had called the facility, and plaintiff admit-
ted at trial that, while on the telephone, she was
being evasive with him. According to plaintiff,
McLaughlin asked her, "There's something wrong,
isn't there?" She stated that there was and he further
inquired if she could tell him. She stated that she
could not and McLaughlin said, "I'll be in there to talk
to you." Plaintiff testified that she did not tell
McLaughlin of Wolshon's behavior because Wolshon
was standing directly in front of her during this tele-
phone conversation. In fact, plaintiff testified that
Wolshon was constantly in the kitchen area during
the week he supervised at the ADP facility, and this
was confirmed by Cade. Although McLaughlin told
plaintiff that he would be in later that week, plaintiff
stated that he did not show up and talk to her that
week.

When Hostutler returned to her supervisory posi-
tion after her vacation on the following Monday,

plaintiff immediately reported Wolshon's conduct to her. Hostutler asked plaintiff to put her complaint in writing, which plaintiff did. After McLaughlin received the written complaint from Hostutler, he had a meeting with plaintiff and Hostutler and told plaintiff that he would further investigate the matter. He also asked plaintiff not to speak to anyone else about the situation. According to plaintiff, after this meeting with McLaughlin and Hostutler, no one from defendant ever again spoke to her about any investigation or the incidents concerning Wolshon. With regard to Wolshon, there was some indication that he was supposed to go to the ADP facility on the day that plaintiff made her written complaint, but that Hostutler "turned him around" and told him to go see McLaughlin. Apparently, Wolshon was, in any event, scheduled to act as a supervisor in Chicago that week following his stay at ADP in Ann Arbor. Defendant should not be able to escape liability because of the fortuitous circumstance that Wolshon is a floating supervisor who was scheduled to be at the ADP facility for only one week and then act as a supervisor in another city. The jury could conclude that defendant had adequate notice on the basis of plaintiff's testimony that she talked on the telephone with McLaughlin and McLaughlin did not thereafter talk to her the week that Wolshon acted as her supervisor, despite stating that he would and knowing that something was wrong, and on the basis of the fact that plaintiff told Hostutler of Wolshon's conduct the immediate Monday after Wolshon left. Further, the jury could conclude on the basis of plaintiff's testimony that she was never informed of any investigation that defen-

dant did not take adequate remedial action to prevent Wolshon from sexually harassing plaintiff.

With regard to defendant's antiharassment policy, plaintiff testified that she did not remember receiving any employment handbook, that she did not remember signing a statement stating that she had read the handbook, and that she was not aware that defendant had an antiharassment policy. The policy required employees to contact George Cousins, a vice president, but when asked at trial if she ever attempted to contact Cousins, plaintiff stated, "I don't even know who he is." Further, McLaughlin testified at length regarding defendant's harassment policy and that new hires are supposed to sign an acknowledgment form. However, defendant never produced any acknowledgment form at trial showing that plaintiff, in fact, received and read the employee handbook.

Regarding vicarious liability, the jury was instructed pursuant to *Radtke* and *Champion v Nation Wide Security, Inc*, 450 Mich 702; 545 NW2d 596 (1996). The evidence and reasonable inferences from the evidence at trial, taken in a light most favorable to plaintiff, supports the jury's verdict that defendant had adequate notice of the sexual harassment of plaintiff by her supervisor and that defendant failed to rectify the problem, that being Wolshon's conduct of sexually harassing plaintiff. I emphasize that it was for the jury to make credibility determinations, to resolve conflicts in the evidence, to weigh the evidence, to accept or reject any of the evidence, and to draw any reasonable inferences from the evidence that it chose to draw. *Brisboy, supra* at 550; *Johnson v Corbet*, 423 Mich 304, 314; 377 NW2d 713 (1985); *Thomas v McGinnis*, 239 Mich App 636, 643-644; 609

NW2d 222 (2000). Moreover, neither the trial court nor an appellate court may substitute its judgment for that of the jury. *Hunt v Freeman*, 217 Mich App 92, 99; 550 NW2d 817 (1996).

Accordingly, I would find that there was sufficient evidence from which the jury could conclude that defendant received notice of the supervisor's harassment toward plaintiff and that defendant did not take adequate remedial action to stop the harassment. I would affirm the jury's verdict.