ELEZOVIC v FORD MOTOR COMPANY

Docket No. 236749. Submitted August 7, 2003, at Detroit. Decided October 23, 2003, at 9:10 A.M. Leave to appeal sought.

Lula Elezovic brought an action in the Wayne Circuit Court against her employer, Ford Motor Company, and her supervisor, Daniel P. Bennett, alleging liability under the Civil Rights Act, MCL 37.2101 *et seq.*, for sexual harassment and gender discrimination. Following the presentation of proofs at a jury trial, the court, Kathleen I. MacDonald, J., directed verdicts in favor of the defendants. The plaintiff appealed, and the defendants cross-appealed to raise a statute of limitations issue about an allegation of sexual harassment.

The Court of Appeals *held*:

1. The trial court did not err in directing a verdict in favor of Ford on the claim of "hostile work environment" sexual harassment. In order to be liable for not adequately investigating and taking prompt and remedial action against an employee's being subjected to unwelcome sexual conduct or communication by another employee, the employer must have notice of the alleged harassment. In this case, the trial court correctly determined that Ford did not have actual or constructive notice of the alleged sexual harassment by Bennett. Although the plaintiff complained to other supervisors about sexual harassment by Bennett, she asked those supervisors not to tell anyone else and not to pursue the matter further with the Ford department responsible for investigating claims of sexual harassment. Communications made to Ford by others on the plaintiff's behalf conveyed matters not related to the alleged sexual harassment by Bennett and were therefore insufficient to provide Ford with actual notice of the alleged harassment. Other evidence presented by the plaintiff was not sufficient to show that Bennett's alleged harassment was so pervasive that it gave rise to constructive notice on the part of Ford.

2. The trial court erred in concluding that the plaintiff failed to establish a hostile environment sexual harassment claim against Bennett. However, MCR 7.215(J) binds the Court of Appeals to follow the holding in *Jager v Nationwide Truck Brokers, Inc*, 252 Mich App 464 (2002), that liability under the Civil Rights Act for sexual harassment by a workplace supervisor may not be imposed

on the supervisor individually because liability is limited to the employer only. *Jager* requires a conclusion that Bennett has no individual liability for sexual harassment. Were it not for *Jager*, the Court of Appeals would reverse the trial court's grant of a directed verdict for Bennett on the claim of hostile environment sexual harassment. The *Jager* panel's reliance on federal law and precedent for its holding was misplaced. Unlike federal law, the Michigan Civil Rights Act expressly establishes a cause of action for sexual harassment, and employer liability under the Civil Rights Act is based on traditional agency principles. The Civil Rights Act defines "employer" to include an agent of the employer. Employer liability for sexual harassment under the Civil Rights Act extends to the harassing employee himself.

3. The trial court did not err in directing verdicts for the defendants on the claim of gender discrimination. The trial court correctly concluded that the plaintiff failed to prove that a similarly situated male employee had been treated more favorably.

4. The trial court did not err in directing verdicts for the defendants on the claim of quid pro quo sexual harassment. The plaintiff presented no evidence that she suffered an adverse employment action as a result of the alleged harassment.

5. The trial court did not abuse its discretion in excluding evidence of Bennett's conviction of indecent exposure. The plaintiff failed to establish a proper purpose for the admission of the evidence pursuant to MRE 404(b) inasmuch as indecent exposure outside the workplace was not sufficiently similar to workplace sexual harassment to establish a common plan, scheme, or system. The evidence was not admissible against Ford as proof that Ford had notice of the alleged sexual harassment by Bennett. The prejudicial nature of the evidence outweighed its probative value.

6. The trial court did not abuse its discretion in excluding evidence of other sexual harassment complaints at the plant where the plaintiff worked. Contrary to the plaintiff's contention, such evidence was not necessary for consideration of the totality of circumstances in the plaintiff's particular work environment.

7. The trial court did not abuse its discretion in disallowing the plaintiff to add a witness who was not identified on her witness list within the time established by the trial court.

8. The defendants' cross-appeal need not be considered in light of the disposition of the plaintiff's appeal.

Affirmed.

KELLY, J., concurring, disagreed that *Jager* was wrongly decided. The inclusion of "agent" within the Civil Rights Act definition of

"employer" does not signal an intent by the Legislature to make individuals as well as employers liable under the act.

*Granzotto & Nicita, P.C.* (by *Mark Granzotto*), and *Edwards & Jennings, P.C.* (by *Alice B. Jennings*), for Lula Elezovic.

*Kienbaum Opperwall Hardy & Pelton, P.L.C.* (by *Julia Turner Baumhart*), and *Robert W. Powell* for Ford Motor Company.

*Sommers, Schwartz, Silver & Schwartz, P.C.* (by *Sam G. Morgan* and *Patrick Burkett*), for Daniel P. Bennett.

Before: JANSEN, P.J., and NEFF and KELLY, JJ.

NEFF, J. Plaintiff Lula Elezovic[1] appeals as of right the trial court's grant of a directed verdict in favor of defendant Ford Motor Company and defendant Daniel Bennett, a former supervisor at Ford, on plaintiff's claims of sexual harassment and gender discrimination. We affirm the grant of the directed verdict in favor of Ford. We also affirm the grant of a directed verdict in favor of Bennett, but only because we are bound to do so by the recent holding in *Jager v Nationwide Truck Brokers, Inc*, 252 Mich App 464, 478; 652 NW2d 503 (2002), in which a panel of this Court decided that under the Michigan Civil Rights Act (CRA), MCL 37.2101 *et seq.*, an individual supervisor cannot be held liable, separate from his employer, for hostile environment sexual harassment. MCR 7.215(J). Were we not bound by the holding in *Jager*, we would reverse the grant of a directed verdict in

---

[1] Plaintiff Joseph Elezovic, Lula's husband, is not involved in this appeal.

favor of Bennett on plaintiff's hostile environment claim, MCL 37.2103(i)(iii).

I

Plaintiff, an hourly production worker at Ford's Wixom Assembly Plant, filed this action in November 1999 against Ford and Bennett, alleging claims of sexual harassment, gender discrimination, and retaliation. At the core of plaintiff's claims was alleged conduct by Bennett from 1995 through 1999 that included Bennett exposing his penis and masturbating when alone with plaintiff in the Wixom plant rail yard, obscene gestures and lewd facial expressions simulating oral sex, a physical attack at a plant bathroom, and repeated sexual remarks such as asking plaintiff if her "boobs [were] real," saying that he "would like to stick [his] dick in between [her] boobs," and licking his lips and asking for a "blow job." According to plaintiff, she did not complain to Ford of Bennett's sexual harassment because of her Albanian cultural background and fear of reprisals or further intimidation by Bennett. However, plaintiff complained about nonsexual matters involving Bennett and her work conditions at Ford. She also sought psychological counseling and medical care, which she said were made necessary by the harassment at work.

Following a three-week jury trial in August 2001, the trial court directed a verdict in favor of defendants, finding that plaintiff had failed to establish a prima facie case of discrimination or retaliation by Ford or Bennett. Plaintiff appeals the grant of directed verdict on her claims of sexual harassment

and gender discrimination.[2] She also alleges error requiring reversal in the court's evidentiary rulings.

## II

The sexual conduct alleged by plaintiff formed the basis of separate claims of sex discrimination under the CRA. We find error only with regard to the claim of hostile environment sexual harassment, and only with regard to defendant Bennett. We therefore first address plaintiff's claim that the court erred in directing a verdict for defendants on her hostile environment sexual harassment claim.

### A

This Court reviews de novo a trial court's decision on a motion for a directed verdict. *Derbabian v S & C Snowplowing, Inc*, 249 Mich App 695, 701; 644 NW2d 779 (2002). A directed verdict is appropriate only when no factual question exists upon which reasonable minds could differ. *Cacevic v Simplematic Engineering Co (On Remand)*, 248 Mich App 670, 679-680; 645 NW2d 287 (2001). We view all the evidence admitted up to the time of the motion, in the light most favorable to the nonmoving party, granting that party every reasonable inference, to determine whether a question of fact existed. *Id.* at 679; *Tobin v Providence Hosp*, 244 Mich App 626, 651-652; 624 NW2d 548 (2001). When the evidence could lead reasonable jurors to disagree, the court may not substitute its judgment for that of the jury. *Id.* at 652.

---

[2] Plaintiff does not appeal the grant of a directed verdict regarding her retaliation claim.

B

The CRA prohibits an employer from discriminating because of sex, which includes sexual harassment. MCL 37.2202(1); MCL 37.2103(i); *Chambers v Trettco, Inc*, 463 Mich 297, 309; 614 NW2d 910 (2000); *Chambers v Trettco, Inc (On Remand)*, 244 Mich App 614, 617; 624 NW2d 543 (2001). MCL 37.2103(i) provides:

> Discrimination because of sex includes sexual harassment. Sexual harassment means unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature under the following conditions:
>
> (i) Submission to the conduct or communication is made a term or condition either explicitly or implicitly to obtain employment . . . .
>
> (ii) Submission to or rejection of the conduct or communication by an individual is used as a factor in decisions affecting the individual's employment . . . .
>
> (iii) The conduct or communication has the purpose or effect of substantially interfering with an individual's employment . . . or creating an intimidating, hostile, or offensive employment . . . environment.

When sexual harassment falls under one of the first two subsections, it is commonly referred to as quid pro quo harassment; when it falls under the third subsection, it is commonly labeled hostile environment harassment. *Chambers, supra*, 463 Mich 310.

To establish a claim of hostile environment harassment, an employee must prove the following elements by a preponderance of the evidence:

> "(1) the employee belonged to a protected group;
>
> "(2) the employee was subjected to communication or conduct on the basis of sex;

"(3) the employee was subjected to unwelcome sexual conduct or communication;

"(4) the unwelcome sexual conduct or communication was intended to or in fact did substantially interfere with the employee's employment or created an intimidating, hostile, or offensive work environment; and

"(5) respondeat superior." [*Id.* at 311, quoting *Radtke v Everett*, 442 Mich 368, 382-383; 501 NW2d 155 (1993).]

With regard to the respondeat superior element of a claim of hostile environment harassment, the *Chambers* Court explained:

"Under the Michigan Civil Rights Act, an employer may avoid liability [in a hostile environment case] 'if it adequately investigated and took prompt and appropriate remedial action upon notice of the alleged hostile work environment.' . . . Such prompt and appropriate remedial action will permit an employer to avoid liability if the plaintiff accuses either a co-worker . . . or a supervisor of sexual harassment. An employer, of course must have notice of alleged harassment before being held liable for not implementing action." [*Id.* at 312, quoting *Radtke, supra* at 396-397.]

Thus, an employer may avoid liability for a claim of sexual harassment if it does not have actual or constructive notice of the alleged harassment. *Radtke, supra* at 396 n 44.

In this case, the trial court granted a directed verdict on the basis that plaintiff had failed to establish that Ford had notice of the alleged sexual harassment. Even viewing the evidence in the light most favorable to plaintiff, we find no error in the court's conclusion.

In *McCarthy v State Farm Ins Co*, 170 Mich App 451, 457; 428 NW2d 692 (1988), this Court

explained what is meant by actual or constructive notice:

> "Where . . . the plaintiff seeks to hold the employer responsible for the hostile environment created by the plaintiff's supervisor or co-worker, she must show that the employer knew or should have known of the harassment in question and failed to take prompt remedial action. . . . The employee can demonstrate that the employer knew of the harassment by showing that she complained to higher management of the harassment . . . or by showing the pervasiveness of the harassment, which gives rise to the inference of knowledge or constructive knowledge." [*Id.* at 457, quoting *Henson v Dundee*, 682 F2d 897, 905 (CA 11, 1982).]

In *Sheridan v Forest Hills Pub Schools*, 247 Mich App 611, 622; 637 NW2d 536 (2001), this Court defined the term "higher management" to mean someone in the employer's chain of command who possesses the ability to exercise significant influence in the decision-making process of hiring, firing, and disciplining the offensive employee.

With regard to actual notice, plaintiff asserts that she told two of her supervisors of the 1995 incident in which Bennett masturbated in front of her. However, plaintiff asked them as friends to keep this confidential and to not tell anyone. She admitted that she did not want them to report Bennett's conduct to labor relations, the department responsible for investigating complaints of sexual harassment. Under these circumstances, plaintiff's report of Bennett's conduct to her supervisors does not constitute actual notice to Ford, such that it could investigate the matter and take remedial action.

Our conclusion regarding actual notice is not altered by the fact that Ford's antiharassment policy

sets forth procedures requiring supervisors to report complaints of sexual harassment. "[N]otice of sexual harassment is adequate if, by an objective standard, the totality of the circumstances were such that a reasonable employer would have been aware of a substantial probability that sexual harassment was occurring." *Chambers, supra,* 463 Mich 319. Given that plaintiff asked her supervisors to keep the information in confidence and not tell anyone about Bennett's unwanted advances, there was not a "substantial probability" that Ford would have been aware of the hostile work environment claim so as to trigger "prompt and adequate remedial action" on its part.

We also reject plaintiff's argument that actual notice was provided by other communications to Ford made on behalf of plaintiff. Contrary to plaintiff's contention, there is no evidence that the letters from her psychologist, Dr. Parker, provided Ford with adequate notice that plaintiff was being subjected to *sexual* harassment by Bennett or to a work environment made hostile by sexual harassment. These letters make no reference to sexual conduct, and, as plaintiff herself admitted, she filed various grievances and labor relations complaints over the years against Bennett, but never once complained about sexual harassment by him.

Plaintiff claims that she presented additional evidence that she complained to Ford officials that Bennett was harassing her, that she was frightened of him, and, further, that her son-in-law, Paul Lulgjuraj, wrote a letter to Ford's supervisor of labor relations, Jerome Rush, asserting that Lulgjuraj might take legal action "to insure that our client is not subjected to working in a hostile environment." The letter did not

mention that plaintiff was being subjected to *sexual* harassment. Although the letter from Lulgjuraj referenced a "hostile environment," plaintiff admitted that its purpose was to notify Ford that she was accusing her co-worker, Tami Holcomb, of threatening her life and she also admitted that the letter was not communicating anything to Ford about there being sexual harassment at Ford. This additional evidence does not, under the objective standard of *Chambers*, establish that Ford would have been aware that sexual harassment was occurring. *Chambers, supra*, 463 Mich 319. Plaintiff failed to show that Ford had actual notice of the alleged sexual harassment.

We also find no error in the court's conclusion that plaintiff failed to establish constructive notice of the alleged sexual harassment. The trial court held that plaintiff had not adduced sufficient evidence showing that Bennett's conduct was so pervasive that it gives rise to the inference of knowledge or constructive knowledge. *Sheridan, supra* at 627; *McCarthy, supra* at 457. In addition to the incidents involving Bennett's sexual harassment, plaintiff provided testimony that other supervisors sexually harassed her and that other female employees were sexually harassed. Nonetheless, this evidence did not establish that the sexual harassment was such that Ford had constructive notice. Plaintiff indicated that there were no witnesses to the alleged incidents of sexual harassment against her. Further, the complaint of alleged sexual harassment of plaintiff's coworker cannot be said to establish notice with respect to plaintiff's claim of harassment. *Sheridan, supra* at 627-628.

Because plaintiff failed to show that she provided actual or constructive notice to Ford concerning the

existence of a sexually hostile working environment, Ford cannot be vicariously liable for her hostile environment claim. *Chambers, supra,* 463 Mich 312; *Radtke, supra* at 395 n 41. Thus, the trial court did not err in directing a verdict for Ford on plaintiff's hostile environment claim.

C

We find error in the trial court's conclusion that plaintiff failed to establish a hostile environment sexual harassment claim against Bennett; however, we are nonetheless obligated to affirm the court's decision in light of *Jager, supra.* As Bennett notes, and plaintiff concedes on appeal, this Court recently held that the CRA imposes liability only on employers, and not on individual employees of employers, with regard to sexual harassment claims. *Id.* at 478, 485. Thus, the *Jager* Court concluded that "a supervisor engaging in activity prohibited by the CRA may not be held individually liable for violating a plaintiff's civil rights." *Id.* at 485. Accordingly, *Jager* requires a conclusion that Bennett has no individual liability for sexual harassment.

Nonetheless, we conclude that *Jager* was wrongly decided. The Court in *Jager* relied on federal precedent and analyses under title VII in deciding that the CRA does not allow for individual liability for sexual harassment, stating: "We believe that, like title VII, the language in the definition of 'employer' concerning an 'agent' of the employer was meant merely to denote respondeat superior, rather than individual liability." *Jager, supra* at 484.

We find *Jager's* reliance on federal law misplaced. The Michigan Supreme Court has recognized that unlike the federal law, the CRA expressly establishes a cause of action for sexual harassment and that employer liability under the CRA for sexual harassment is based on traditional agency principles. *Chambers, supra* at 311, 315-316, 326. Thus, this Court has observed that the theories of liability underlying federal sexual harassment cases must be distinguished from those underlying the CRA:

> To the extent that the dissent relies on federal cases involving sexual harassment claims under title VII, that reliance is misplaced. In *Chambers,* our Supreme Court held that federal principles of vicarious liability related to sexual harassment claims brought under the federal title VII do not apply to claims brought under Michigan's CRA. The Court reasoned that federal principles are contrary to Michigan case law and the express language of the CRA. *Chambers, supra* at 303, 316. . . . The Court concluded that common-law agency principles determine when an employer is liable for sexual harassment committed by its employees under the CRA, whereas federal principles of vicarious liability pertinent to title VII are founded in negligence. As such, the Court refused to apply federal principles to sexual harassment claims alleging employer liability under the CRA. *Id.* at 311, 314-316. See *Chambers v Trettco, Inc (On Remand),* 244 Mich App 614, 618; 624 NW2d 543 (2001) (recognizing that under federal law, once "a plaintiff has established that a supervisor created a hostile working environment, the burden shifts to the employer to disprove vicarious liability for the supervisor's actions," but that "under state law, vicarious liability will be found only where the plaintiff has carried the burden of proving respondeat superior"). Given that clear mandate by our Supreme Court, we cannot apply federal title VII principles of vicarious liability in defining the term "higher management" as it relates to a claim under the CRA. We instead rely on the express language of the CRA and the cited Michigan cases in determining the proper

standard. *Chambers, supra,* 463 Mich 303, 316. [*Sheridan, supra* at 622-623 n 12.]

Michigan's CRA is rooted in common-law agency principles. *Chambers, supra,* 463 Mich 311. The *Chambers* Court stated, "[b]ecause the Civil Rights Act expressly defines 'employer' to include agents, we rely on common-law agency principles in determining when an employer is liable for sexual harassment committed by its employees." *Id.* In this case, we can find no basis for distinguishing *Chambers* on the ground that it involved an issue of employer liability.

The CRA prohibits an employer from discriminating because of sex, which includes sexual harassment, as defined in MCL 37.2103(i). The statute expressly defines an employer as including an agent:

"Employer" means a person who has 1 or more employees, and includes an agent of that person. [MCL 37.2201(a).]

"Person" means an individual, agent, association, corporation, joint apprenticeship committee, joint stock company, labor organization, legal representative, mutual company, partnership, receiver, trust, trustee in bankruptcy, unincorporated organization, the state or a political subdivision of the state or an agency of the state, or any other legal or commercial entity. [MCL 37.2103(g).]

The Legislature expressly and separately added "agent" to the definition of "employer." This definitional language indicates that an agent bears liability for discrimination. Common-law agency principles are in keeping with this language. Under agency principles, an agent is generally liable to a third person for misfeasance and for his own tortious acts. See Michigan Pleading and Practice, Agency, § 104, p 366;

*Warren Tool Co v Stephenson*, 11 Mich App 274, 300; 161 NW2d 133 (1968).

In reaching its holding, the *Jager* Court relied on the reasoning of the Sixth Circuit Court of Appeals in *Wathen v Gen Electric Co*, 115 F3d 400, 406 (CA 6, 1997), which found that the language "and any agent of such a person"[3] in the federal act did not impose individual liability for sexual harassment. However, the *Walthen* court relied in key part on the limitation in the federal law's definition of employer that limits liability for discrimination to employers with fifteen or more employees. *Id.* at 406. We disagree with the *Jager* Court's conclusion that this distinction "does not signal an intent by the Legislature to make individuals as well as employers liable under the act." *Jager, supra* at 483-484. The *Walthen* court reasoned that it was inconceivable that a Congress concerned with protecting small employers would simultaneously allow civil liability to run against individuals. *Id.* at 406. Unlike the federal act, the CRA expressly prohibits sexual harassment, *Chambers, supra*, 463 Mich 315, and clearly expresses the Legislature's intent that sexual harassment be strictly prohibited in this state's work environment, including the workplace of the smallest employer. MCL 37.2201(a). Further, contrary to the reasoning of *Walthen*,[4] the CRA's remedy provi-

---

[3] "Title VII defines 'employer' to mean 'a person engaged in an industry affecting commerce who has fifteen or more employees  and any agent of such a person.' " *Jager, supra* at 483 n 12, quoting 42 USC 2000e(b).

[4] The *Walthen* court reasoned that Congress did not envision individual liability because title VII's remedial provisions initially limited recovery to reinstatement and back pay, remedies available only from an employer, and when it was subsequently amended to allow compensatory and punitive damages, Congress calibrated the amounts recoverable to the size of the employer. *Walthen, supra* at 406.

sions are not incompatible with the imposition of individual liability for violations of the act since the CRA allows damages for injury or loss caused by each violation of the CRA, including reasonable attorney fees. MCL 37.2801(1) and (3); *Hall v State Farm Ins Co*, 18 F Supp 2d 751, 764 (ED Mich, 1998).

We are not the first to question the statutory interpretation espoused in *Jager*. While adhering to the *Jager* holding, the court in *United States ex rel Diop v Wayne Co Community College Dist*, 242 F Supp 2d 497, 507 (ED Mich, 2003), noted its disagreement with the *Jager* interpretation of the CRA given the statutory language: "[T]his Court does not necessarily endorse the Michigan Court of Appeals' interpretation of the language in the Elliott-Larsen Act in *Jager*, as it believes that the language 'includes an agent of that employer,' could, under principles of strict statutory construction, well be read as extending liability to individuals. Otherwise, this phrase is merely surplusage, as it adds nothing to the definitional scope of "employer," which itself defines the term 'employer' as a person." We concur with this observation.

*Chambers*, implicitly, if not explicitly, recognized that an individual may be held liable for sexual harassment under the CRA. The Court noted that its distinctions with regard to employer liability for hostile environment sexual harassment "simply allows this Court to determine whether the sexual harasser's *employer*, in addition to the sexual harasser *himself*, is to be held responsible for the misconduct." *Chambers, supra* at 320 (emphasis in original). We are unable to reconcile the holding in *Jager* with the Supreme Court's analyses in *Chambers* or the language of the CRA.

The facts of this case bear out the anomalous result with respect to Bennett under the holding in *Jager*. Merely because the company is absolved of legal fault for lack of notice, the alleged perpetrator-supervisor is also shielded from liability, even though he purposely created a hostile work environment, and even though his conduct, if proved, undeniably constitutes sexual harassment.[5]

We conclude that under the controlling legal principles regarding sexual harassment under Michigan law, *Chambers*, *supra* at 313, the Legislature did not intend to preclude individual liability for sexual harassment. Were it not for this Court's holding in *Jager*, we would reverse the trial court's grant of a directed verdict in favor of Bennett with regard to plaintiff's hostile environment claim.

---

[5] The holding in *Jager* appears to be leading to greater inconsistency in outcomes with regard to claims under the CRA. Recently, in *Poaches v Electronic Data Systems Corp*, 266 F Supp 2d 623, 628 (ED Mich, 2003), the United States District Court for the Eastern District of Michigan rejected the analysis of *Jager* with regard to an anti-retaliation claim under the CRA, concluding that the Legislature's use of the broader term "person" under the anti-retaliation provision supports a conclusion that the Legislature intended the imposition of individual liability for retaliation under the CRA:

   Here, the Michigan Legislature has clearly spoken—it has prohibited retaliation by any "person," in contrast to its prohibition on discrimination by an "employer," and it has expressly defined "person" more broadly than "employer," with the former encompassing the latter. Following this plain language where it naturally leads, the Court concludes that the scope of liability is broader under the Elliott-Larsen Act's anti-retaliation provision than under the Act's anti-discrimination provision. If this is not what the Michigan Legislature intended through its use of different terms in the two provisions, it is the task of that body, and not this Court, to amend the Act accordingly.

III

We find no error requiring reversal with regard to plaintiff's remaining claims. The trial court did not err in granting a directed verdict on plaintiff's claim of gender discrimination. To establish a claim of gender discrimination, plaintiff must show, by a preponderance of the evidence, that (1) she is female, (2) she was subjected to an adverse employment action, (3) she was qualified for the position, and (4) similarly situated male employees were treated more favorably so as to be "unaffected by the employer's adverse conduct." *Town v Michigan Bell Telephone Co*, 455 Mich 688, 695; 568 NW2d 64 (1997). Contrary to plaintiff's claim, the trial court properly concluded that plaintiff failed to identify and prove that a similarly situated male employee had been treated more favorably.

IV

The trial court did not err in granting a directed verdict on plaintiff's claim of quid pro quo sexual harassment. In *Chambers, supra*, 463 Mich 310, the Court, quoting *Champion v Nation Wide Security, Inc*, 450 Mich 702, 708-709; 545 NW2d 596 (1996), set forth the elements of quid pro quo sexual harassment claim. Specifically, a plaintiff must prove:

"(1) that she was subject to any of the types of unwelcome sexual conduct or communication described in the statute, and (2) that her employer or the employer's agent used her submission to or rejection of the proscribed conduct as a factor in a decision affecting her employment."

Plaintiff failed to introduce sufficient evidence identifying a tangible employment action resulting from Bennett's sexual harassment. There was no "objective evidence" that plaintiff suffered a "materially and objectively adverse" employment decision. *Chambers, supra,* 463 Mich 320 n 7. The record reflects that plaintiff suffered no tangible employment action with regard to being "bumped" because she continued to perform the same job for the same wage and returned to her former shift within a few weeks. Plaintiff presented no evidence that she was denied overtime after Bennett's sexual harassment.

Moreover, plaintiff failed to present sufficient evidence showing that the "bumping" and the denial of overtime were caused by Bennett's misconduct. Decisions regarding bumps in shifts and overtime were a function of the collective bargaining agreement and were not controlled by individual supervisors. Finally, given the passage of time from Bennett's misconduct in 1995 to the alleged adverse employment action, plaintiff failed to show the necessary causal linkage required by *Chambers, supra,* 463 Mich 317.

V

We find no basis for reversal with regard to plaintiff's evidentiary claims. The decision whether to admit evidence is within the discretion of the trial court and will not be disturbed on appeal absent a clear abuse of discretion. *Chmielewski v Xermac, Inc,* 457 Mich 593, 614; 580 NW2d 817 (1998); *Peña v Ingham Co Rd Comm,* 255 Mich App 299, 303; 660 NW2d 351 (2003). An abuse of discretion exists when an unprejudiced person, considering the facts on which the trial court acted, would say that there was

no justification or excuse for the ruling. *People v Rice (On Remand)*, 235 Mich App 429, 439; 597 NW2d 843 (1999).

A

The trial court did not abuse its discretion in excluding, under MRE 404(b), evidence of Bennett's 1995 conviction of indecent exposure and the facts associated with that conviction. According to plaintiff, Bennett's indecent exposure conviction arose from a nonwork-related incident in which Bennett reportedly followed a car on the expressway with three teenage girls in it, pulled alongside the girls' car, and began waving and pointing at his groin area, whereupon the girls saw that Bennett was masturbating. Because Bennett was driving a company car, the police traced the license plate to Ford, and the head of security informed them that the car was assigned to Bennett. He was convicted of indecent exposure after a trial.[6]

MRE 404(b) provides:

(1) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

---

[6] According to defendant Ford, Bennett's conviction was subsequently expunged.

To be admissible under MRE 404(b), evidence generally must satisfy three requirements: (1) it must be offered for a proper purpose, (2) it must be relevant, and (3) its probative value must not be substantially outweighed by its potential for unfair prejudice, MRE 403. *People v Starr*, 457 Mich 490, 496, 498; 577 NW2d 673 (1998); *People v VanderVliet*, 444 Mich 52, 74-75; 508 NW2d 114 (1993), mod 445 Mich 1205 (1994). A proper purpose is one other than establishing the defendant's character to show his propensity to commit the offense. *Id.* at 74.

1

The trial court did not abuse its discretion in excluding evidence of Bennett's conviction. Plaintiff failed to establish that the evidence was offered for a proper purpose.

Bennett's act of indecent exposure outside the workplace is not sufficiently similar to sexually harassing an employee in the workplace to establish a common plan, scheme, or system. *People v Sabin (After Remand)*, 463 Mich 43, 63-66; 614 NW2d 888 (2000). Unlike in *Sabin*, *id.* at 64-65, here, there was not a sufficiently strong showing that evidence of Bennett's conviction shared a "concurrence of common features" with his alleged sexual harassment of plaintiff. Further, even if the evidence was admitted for a proper purpose, we would find no abuse of discretion in the court's exclusion of the evidence otherwise under MRE 404(b).

2

We also reject plaintiff's claim that Bennett's conviction was admissible against Ford because it was

essential evidence of notice to Ford of Bennett's conduct, which was necessary to proving respondeat superior. *Chambers, supra* at 312. As plaintiff correctly notes, the Michigan Supreme Court has taken a "sliding scale" approach to the MRE 403 analysis. See *People v Mills*, 450 Mich 61, 75-76; 537 NW2d 909 (1995), mod 450 Mich 1212 (1995). "[T]he idea of prejudice denotes a situation in which there exists a danger that marginally probative evidence will be given undue or pre-emptive weight by the jury." *Mills, supra* at 75, quoting *Sclafani v Peter S Cusimano, Inc*, 130 Mich App 728, 735; 344 NW2d 347 (1983).

Plaintiff contends that Bennett's conviction was highly probative evidence and should have been admitted because it was "absolutely essential background fact" in considering the totality of the circumstances with regard to notice. *Sheridan, supra* at 622. Plaintiff maintains that knowledge of the indecent exposure conviction would lead a reasonable employer to conclude that plaintiff's general complaints about Bennett were indicative of sexual harassment. Plaintiff asserts that such essential evidence can never be excluded under MRE 403.

We find plaintiff's argument unconvincing. Plaintiff had previously made a specific complaint of sexual harassment against her union committeeman at Ford and, on the contrary, voiced only nonsexual complaints against Bennett. Under these circumstances, we cannot agree with plaintiff's contention that the evidence was essentially conclusively probative of notice. Plaintiff has otherwise failed to show any link between Ford's knowledge of Bennett's indecent exposure conviction and Ford's receipt or investigation of plaintiff's work complaints. The court did not abuse its discretion in excluding the conviction evi-

dence on the basis that its probative value was substantially outweighed by the danger of unfair prejudice. At most, the evidentiary issue presented a close question. There can ordinarily be no abuse of discretion in a trial court's decision regarding a close evidentiary question. *Sabin, supra* at 67.

B

The trial court did not abuse its discretion in excluding evidence of other sexual harassment complaints at Ford Wixom. According to plaintiff, the trial court's exclusion of a database of sexual harassment claims brought at Ford Wixom, prepared by her counsel, prevented her from exploring at trial these other charges of sexual harassment and was directly relevant in assessing Ford's respondeat superior liability.

Contrary to plaintiff's contention, the database evidence was not automatically admissible merely because *Chambers* requires consideration of the totality of the circumstances. As Ford correctly argues, the phrase "the totality of circumstances" refers to the circumstances of a plaintiff's work environment.

> A hostile work environment claim is actionable only when, in the totality of the circumstances, the work environment is so tainted by harassment that a reasonable person would have understood that the defendant's conduct or communication had either the purpose or effect of substantially interfering with the plaintiff's employment, or subjecting the plaintiff to an intimidating, hostile, or offensive work environment. [*Radtke, supra* at 398.]

Even though the trial court excluded the "database" enumerating the complaints filed at Ford Wixom, it did not exclude those complaints that were relevant

to plaintiff's work environment. Accordingly, the trial court did not abuse its discretion by excluding the complaints that did not pertain to plaintiff's work environment.

VI

The trial court did not abuse its discretion in refusing plaintiff's request to add Pamela Perez to her witness list. A trial court's decision to bar testimony of a witness who was not identified within the period established by the court is reviewed for an abuse of discretion. *Hayes-Albion Corp v Kuberski*, 421 Mich 170, 188; 364 NW2d 609 (1984). "This Court will not disturb a trial court's decision regarding whether to permit a witness to testify, after a party has failed to comply with a deadline for submission of a witness list, absent an abuse of discretion." *Carmack v Macomb Co Community College*, 199 Mich App 544, 546; 502 NW2d 746 (1993).

Plaintiff's complaint was filed in November 1999. After extensive discovery and numerous pretrial motions, the trial court scheduled the trial to begin on August 13, 2001. On June 28, 2001, it came to light, during a deposition in an unrelated case against the same defendants, that another Ford Wixom female employee, Perez, claimed that she too had been subjected to unwanted sexual advances made by Bennett.

On July 2, 2001, plaintiff filed an emergency motion to add Perez as a witness in this case. Perez appeared for her deposition on July 25, 2001, which was less than three weeks before the trial was scheduled to start. At the deposition, Perez testified about several

incidents involving inappropriate sexual behavior on the part of Bennett. After hearing argument from counsel, the trial court refused to allow Perez to testify.

Although plaintiff argues that defendants were not prejudiced because they had the opportunity to depose Perez, plaintiff acknowledges that defendants needed time to find the witnesses who could confirm or deny the allegations made by Perez. We therefore find no abuse of discretion in the denial of plaintiff's request to add Perez as a witness in this case, especially considering that plaintiff had filed her complaint in November 1999 and that the case was about to go to trial.

VII

In light of our above conclusions, we do not address defendants' claim on cross-appeal that plaintiff's sexual harassment allegation concerning the alleged exposure incident was barred by the statute of limitations.

Affirmed.

Jansen, P.J., concurred.

Kelly, J. *(concurring)*. I respectfully disagree with the majority's conclusion that *Jager v Nationwide Truck Brokers, Inc*, 252 Mich App 464, 478; 652 NW2d 503 (2002), was wrongfully decided. Accordingly, I would affirm the trial court's grant of a directed verdict in favor of Bennett on plaintiff's hostile environment claim, MCL 37.2103(i)(iii), on the basis of *Jager* not because I am bound by court rule to follow it, but

because it was correctly decided. I concur with the majority in all other respects.

As noted by the majority, the CRA prohibits an employer from discriminating because of sex, which includes sexual harassment. MCL 37.2202(1); MCL 37.2103(i); *Chambers v Trettco, Inc*, 463 Mich 297, 309; 614 NW2d 910 (2000); *Chambers v Trettco, Inc (On Remand)*, 244 Mich App 614, 617; 624 NW2d 543 (2001). The CRA clearly expresses the Legislature's intent that sexual harassment be strictly prohibited in this state's work environment, including the workplace of the smallest employer. MCL 37.2201(a).

The statute defines "employer" as including an agent of that employer. MCL 37.2201(a). However, the simple fact that MCL 37.2201(a) defines "employer" as including an "agent of that [employer]" does not, in and of itself, authorize a CRA claim against such an agent.[1] Rather, I read the statute as meaning that an employing entity may be held liable for the individual and collective acts of it agents. This reading is supported by *Chambers*, wherein our Supreme Court stated:

> Because the Civil Rights Act expressly defines "employer" to include agents, we rely on common-law agency principles in determining when an employer is liable for sexual harassment committed by its employees. . . .
>
> . . . The bottom line is that, in cases involving a hostile work environment claim, a plaintiff must show some *fault* on the part of the employer. That is the essence of *Radtke's*

---

[1] This is not to say, of course, that no action at all can lie against an actor individually. Traditional tort actions, when warranted, could still be asserted against an agent in his or her individual capacity. Thus, I agree with the majority that "an agent is generally liable to a third person for misfeasance and for his own tortious acts." But, this is not the same as saying the actor is individually liable for violations of the CRA.

requirement that a plaintiff prove that the employer failed to take prompt and adequate remedial action upon notice of the creation of a hostile work environment.

Therefore, under current Michigan law . . . the question is always whether it can be fairly said that the employer committed the violation—*either directly or through an agent.* The fact that the answer to that question may differ depending on whether the harassment is of the quid pro quo or hostile environment type is not a result of arbitrary rulemaking, but, rather, is firmly rooted in traditional agency principles. [*Chambers, supra,* 463 Mich 311-312 (emphasis added).]

Applying agency principles, a principal is responsible for the acts of its agents done within the scope of the agent's authority, "even though acting contrary to instructions." *Dick Loehr's, Inc v Secretary of State,* 180 Mich App 165, 168; 446 NW2d 624 (1989). This is because, in part, an agency relationship arises where the principal has the right to control the conduct of the agent. *St Clair Intermediate School Dist v Intermediate Ed Ass'n/Michigan Ed Ass'n,* 458 Mich 540, 558 n 18; 581 NW2d 707 (1998) (citations omitted). The employer is also liable for the torts of his employee if " 'the servant purported to act or to speak on behalf of the principal and there was reliance upon apparent authority, or he was aided in accomplishing the tort by the existence of the agency relation,' " *McCann v Michigan,* 398 Mich 65, 71; 247 NW2d 521 (1976), quoting Restatement of Agency, 2d § 219(2)(d), p 481; see also *Champion v Nation Wide Security, Inc,* 450 Mich 702, 704, 712; 545 NW2d 596 (1996), citing Restatement of Agency, 2d § 219(2)(d), p 481 ("the master is liable for the tort of his servant if the servant 'was aided in accomplishing the tort by the existence of the agency relation' "). In *Backus v*

*Kauffman (On Rehearing)*, 238 Mich App 402, 409; 605 NW2d 690 (1999), this Court stated:

> The term "authority" is defined by Black's Law Dictionary to include "the power delegated by a principal to an agent." Black's Law Dictionary (7th ed), p 127. "Scope of authority" is defined in the following manner: "The reasonable power that an agent has been delegated or might foreseeably be delegated in carrying out the principal's business." *Id.* at 1348.

Statutory language should be construed reasonably, keeping in mind the purpose of the act. *Draprop Corp v Ann Arbor*, 247 Mich App 410, 415; 636 NW2d 787 (2001). As stated previously, the purpose of the CRA was to strictly prohibit discrimination in the workplace committed directly by the employer or through its agents. I agree that "the language in the definition of 'employer' concerning an 'agent' of the employer was meant merely to denote respondeat superior, rather than individual liability." *Jager, supra* at 484. This is consistent with our Supreme Court's holding in *Radtke v Everett*, 442 Mich 368, 382-383; 501 NW2d 155 (1993), that a plaintiff must necessarily prove the element of respondeat superior in a claim of hostile environment harassment. Bringing a CRA claim against an agent of the employer in an individual capacity would render this requirement superfluous and do nothing to forward the purposes of the act. Thus, I concur in the *Jager* Court's conclusion that the inclusion of "agent" within the definition of "employer" "does not signal an intent by the Legislature to make individuals as well as employers liable under the act." *Jager, supra* at 483-484.

Accordingly, I disagree with the majority that *Jager* was wrongly decided and I would affirm the trial court's grant of a directed verdict in favor of Bennett.