**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 05a0466n.06
Filed: June 6, 2005

**Nos. 04-1221, 04-1228**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | |
|---|---|
| JENNIFER GOLEVSKI a/k/a JENNIFER WOOD, | ) ) ) |
| Plaintiff-Appellant, | ) ) |
| v. | ) **ON APPEAL FROM THE UNITED** ) **STATES DISTRICT COURT FOR THE** ) **EASTERN DISTRICT OF MICHIGAN** |
| HOME DEPOT U.S.A., INC. a/k/a THE HOME DEPOT, a Delaware corporation; NATIONAL BLINDS AND WALLPAPER, INC., a Delaware corporation, Jointly and Severally, | ) ) ) ) ) |
| Defendants-Appellees. | |

Before: KEITH, CLAY, and FARRIS,[*] Circuit Judges.

**KEITH, Circuit Judge.** This case was previously bifurcated and presents two distinct appeals, based on two claims presented in Plaintiff's initial complaint. The first is an appeal of the district court's grant of summary judgment for the Defendants, The Home Depot U.S.A., Inc. and National Blinds and Wallpaper, Inc. (collectively, "Home Depot"), on Plaintiff Jennifer Golevski's ("Golevski") claim of sexual harassment under the Elliot-Larsen Civil Rights Act of Michigan, MCL 37.2101 ("ELCRA"). The second is an appeal of the district court's grant of summary judgment for

---

[*] The Honorable Jerome Farris, United States Circuit Judge for the Ninth Circuit, sitting by designation.

Home Depot on Golevski's claim that she was wrongfully terminated from her job with Home Depot while she was on medical leave, in violation of the Family and Medical Leave Act, 29 U.S.C. §2611, et. seq. ("FMLA"). Golevski also submits a request on appeal that the case be reassigned on remand to a new judge, alleging bias on the part of the district court judge, John Corbett O'Meara.

While we note that there is some dispute over whether Golevski notified her supervisors of the ongoing harassment she allegedly encountered at work, we find that Golevski failed to submit more than a "mere scintilla" of evidence in support of that aspect of her claim, as required to survive a motion for summary judgment. *See Skousen v. Brighton High School*, 305 F.3d 520, 526 (6th Cir. 2002) ("A mere scintilla of evidence is insufficient; 'there must be evidence on which the jury could reasonably find for the [non-movant].'") (quoting *Anderson v. Liberty Lobby, Inc*, 477 U.S. 242, 252 (1986)). Accordingly, we affirm the district court's grant of summary judgment for Defendants on Golevski's claim under the ELCRA. Because we find that there is no dispute over material facts, we also affirm the district court's grant of summary judgment for Defendants on Golevski's claim that she was wrongfully terminated while on medical leave, in violation of the FMLA. Finally, noting that there is no significant evidence offered that the district court exhibited any unlawful bias towards the Plaintiff, we dismiss this allegation with prejudice.

## I. Background

Jennifer Golevski began working for Home Depot on November 21, 1994. Golevski was promoted to the position of Department Manager at Home Depot roughly eighteen months later, in April 1996, a position that she held until her last day of work on November 19, 1999. Golevski

alleges that during the course of her employment with Home Depot, five Home Depot employees sexually harassed her, or made comments that created an intimidating, hostile, or offensive work environment. These five employees were Norm Weichert ("Weichert"), Craig Hanson ("Hanson"), Bob Shepard ("Shepard"), Steve Day ("Day"), and Gino Pulice ("Pulice").

The first individual, Weichert, was Golevski's immediate supervisor during 1999, her last year working at Home Depot. In her deposition Golevski claims Weichert told her that she "could do better" in reference to Golevski's boyfriend at the time. Joint Appendix ("J.A.") at 1310. Golevski claims that she informed David Katzman, their unit's president, at the time about the comment and alleges that Katzman said he "would look into it," but no action was ever taken. *Id.* at 1309-10.

The second individual, Hanson, allegedly made various comments about Golevski's "butt" that were overheard by Home Depot's Director of Operations, who agreed that the comments were inappropriate. According to Golevski, after the Director of Operations voiced her objection to the comments with Hanson, Hanson did not make another offending remark. *Id.* at 1311.

The third individual, Shepard, was a manager at Home Depot but was not Golevski's direct supervisor. Golevski alleges that Shepard made comments about her mother being "hot" and "pretty" and that "he would expect her to be that pretty since [Golevski] was so pretty." Shepard also allegedly asked several times for a date with Golevski's mother. *Id.* at 1297. Golevski claims to have reported this behavior to the Director of Operations, and though the Director denies that Golevski reported anything to her, Golevski admits that she had no further problems with Shepard after that report.

The fourth individual, Day, was a coworker of Golevski and was not positioned in a supervisory role over her. Golevski claims that Day made various vulgar and extremely explicit and lewd sexual comments to her and her coworkers. *Id.* at 1313. Golevski maintains that she attempted to "laugh off" the comments and told Day to "stay away from" her, but claims that the comments continued for "at least" a year. *Id.* at 1314. There are no alleged witnesses to any of the comments, and Golevski did not submit any written evidence of the complaints to the court. She claims that she was "unsuccessful" in talking to her supervisors about the harassing comments, although she admits that the most she ever "reported" to anyone was that "there was inappropriate sexual behavior on the floor." *Id.* Golevski did not submit any evidence to show and does not allege that she told her supervisors anything specific about the comments Day made to her and her coworkers. The only potential complaint Golevski ever made specific to Day, according to her, was to mention to Wiechert, her immediate supervisor and another alleged harasser, that she "was uncomfortable working with [Day] 'cause [Weichert] used to leave early." *Id.* at 957. Incidentally, after Golevski left Home Depot, other female employees complained about specific comments made by Day to another female employee (not Golevski). Following those complaints, Day was quickly fired for "violation of standards of conduct, behavior unfitting of a manager" and for "creating a hostile work environment" because of his inappropriate comments. *Id.* at 967-68.

The fifth and final individual who Golevski claims harassed her at work is Pulice, who, like Day, was a nonsupervisory coworker. *Id.* at 1311. Golevski testified: "[Pulice] would talk about my chest, my butt, how he'll leave his girlfriend to be with me." *Id.* at 1316. Golevski also alleges "[Pulice] would always make comments about how sexy I was and when I walked he would make

ba-boom noises about my chest." *Id.* According to Golevski, these comments went on for at least a year, but again there were no alleged witnesses to the comments. Golevski also admits that while she complained to Home Depot management about the uncomfortable environment, she did not make any specific allegations to any supervisors about Pulice's comments.

In addition, during the time when these alleged comments were occurring, Golevski was a patient of various psychiatrists and therapists.[1] Most recently, beginning in September 1999, Golevski began treatment with Dr. Barbara Beebe. Dr. Beebe testified that while Golevski told Beebe that she "hate[d] her boss" and that her job caused her "stress," she never said anything that suggested she was being harassed at work. At her fourth session with Dr. Beebe, on October 20, 1999, Golevski told the doctor that she was overwhelmed and anxious about her job, and smiled when she discussed "how much she hates her boss." *Id.* at 812. Dr. Beebe found that Golevski was suffering from bulimia and depression, both of which were exacerbated by the stressfulness of her job. Concluding that Golevski required two weeks of medical leave to obtain proper treatment for her problems, Dr. Beebe gave Golevski a doctor's note to excuse her from work for two weeks: October 21, 1999 through November 4, 1999. Upon receiving her excuse from Dr. Beebe, Golevski completed and filed a Leave of Absence Agreement, as required by Home Depot policy. Golevski returned to work as scheduled on November 5, 1999.

---

[1] There is no evidence submitted to indicate that any of the psychiatrists who treated Golevski throughout her employment knew of any harassment she was allegedly experiencing at work.

Between November 16 and 19, 1999, Golevski was reprimanded for three separate incidents involving managing her subordinates and gossiping. On November 19, 1999, Golevski was lectured by her superiors for "failure to manager Associate issues" and was expressly told that she was being warned as a "final corrective." The following day, and for ten subsequent days, Golevski called Home Depot each morning to report that she was too sick to come in to work.

On November 29, 1999, Golevski saw a general practitioner, Dr. VanDeWinkle, who gave Golevski a note excusing her previous absence due to "medical therapy" and stated that she would return to work on December 9, 1999. Golevski gave the medical excuse to a coworker, who submitted it to appropriate Home Depot personnel for her. On December 7, 1999, two days prior to the expiration of her excuse, Golevski had another appointment with Dr. VanDeWinkle. The doctor gave her a second excuse for another week off from work, which she claims to have given to the same coworker to turn in on her behalf.

The following day, December 8, 1999, Golevski had a conference call with the Director of Operations, the Human Resources Manager, and the Division Manager for Home Depot. After reviewing Golevski's two week absence and her medical need for a second one, they requested that Golevski complete the appropriate paperwork. The management team sent the paperwork to Golevski, which she received the following day, December 9, 1999.

Golevski was scheduled to return to work on December 14, 1999. Instead of returning, however, she called and said she would be in on December 16, 1999. She also noted that she would turn in her completed leave paperwork upon her return to work that day.

On December 15, 1999, Golevski had an appointment with Dr. Beebe. Dr. Beebe gave Golevski a note that required her to spend six weeks off from work to enter treatment for bulimia, from December 16, 1999, through January 31, 2000.

Golevski then informed the Human Resources Manager at Home Depot about her note from Dr. Beebe, and told him that she would drop off the company's required leave of absence paperwork the next day. When she failed to do so, the Home Depot management sent Golevski a letter, along with a copy of the paperwork request and other forms, stating: "Our records indicate that you were to return to work on Wednesday December 15, 1999. As of today, December 16, 1999, you have not returned to work as scheduled and have not provided documentation regarding your absence." The letter went on to state that because Golevski had not turned in the required paper work, she had not "followed the proper procedure in requesting a formal leave of absence." The letter also informed Golevski that she was required to return to work on December 27, 1999, or return the required paperwork and a formal request for a medical leave of absence. If she did neither, the letter indicated that Home Depot would consider Golevski to have voluntarily terminated her employment.

Though Golevski claims that she never received the second letter, she failed to submit the required paperwork and did not return to work on December 27, 1999. Accordingly, Home Depot terminated Golevski for "job abandonment" and for her "failure to follow leave of absence procedure."

Golevski subsequently filed a complaint with the Michigan Department of Civil Rights ("MDCR"), alleging that she was wrongly terminated in violation of the FMLA. There is no mention of any sexual harassment in Golevski's handwritten MDCR complaint, and she never raised

such allegations during her discussions with the MDCR investigator. The MDCR ultimately dismissed her claim based on her failure to cooperate.

In July 2000, Golevski applied for Workers' Compensation benefits, claiming she had to leave her job due to stress, writing: "[c]orporate buyout resulted in drastic changes in manager relationships resulting in friction giving rise to a disabling psychiatric illness." *Id.* at 938. Again, Golevski did not list incidents of sexual harassment as the cause of her stress. Golevski eventually settled the workers compensation claim for a nominal amount, and thereafter filed this lawsuit.

## II. Standard of Review

We review a district court's grant of summary judgment de novo. *Equitable Life Assur. Soc'y v. Poe*, 143 F.3d 1013, 1015 (6th Cir. 1998). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is considered "material" if "proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action . . . asserted by the parties, and would necessarily affect the application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir. 1984) (citing Black's Law Dictionary 881 (6th ed. 1979)).

A genuine issue of material fact exists when there is sufficient evidence for a trier of fact to find for the non-moving party, in this case, Golevski. Importantly, a "mere scintilla" of evidence

will not be enough for the non-moving party to withstand summary judgment. *Skousen*, 305 F.3d

at 526. Rather, to overcome a motion for summary judgment the non-moving party must show

"sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If

the [nonmovant's] evidence is merely colorable . . . summary judgment may be granted." *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson*, 477 U.S. at 252 ("[T]here must be

evidence on which the jury could reasonably find for the [non-movant].").

### III. Sexual Harassment Under Michigan's Elliot-Larsen Civil Rights Act

Under the ELCRA, an employer is liable for sexual harassment resulting in a hostile work

environment only if it failed to investigate and take prompt, appropriate remedial action after having

received actual or constructive notice of the harassing conduct. *Chambers v. Trettco*, 614 N.W.2d.

910, 915 (Mich. 2000).[1] Upon our review of the record and the ruling by the district court, we find

that Golevksi did not present sufficient evidence to indicate that Home Depot management failed

to respond properly to any specific allegations that were brought to its attention.

---

[1] In addition to showing that the employer had been provided constructive notice and did not respond appropriately, thus making them liable through respondeat superior, a *prima facie* claim of sexual harassment under ELCRA requires that a plaintiff submit evidence showing that: (1) the harassed employee belonged to a protected group; (2) the employee was subjected to communication or conduct on the basis of sex; (3) the employee was subjected to unwelcome sexual conduct or communication; and (4) the unwelcome sexual conduct was intended to or did in fact substantially interfere with the employee's employment or created an intimidating, hostile, or offensive work environment. *Chambers*, 614 N.W.2d. at 915 (citing *Radtke v. Everett*, 501 N.W.2d. 155, 162 (Mich. 1993)).

In *Chambers,* the Michigan Supreme Court emphasized that in presenting evidence on the issue of respondeat superior, a plaintiff "must show some fault on the part of the employer" to not take immediate remedial action. *Id.* at 312.  More recently, the Michigan Court of Appeals has affirmed the dismissal of hostile environment sexual harassment claims where the notice of the harassment was not specific.  *See, e.g., Elezovic v. Ford Motor Co.,* 673 N.W.2d. 776 (Mich. Ct. App. 2003) (dismissing a sex harassment claim because the notice of the harassment was not specific).

There is little evidence that Golevski ever put Home Depot on specific notice of the alleged sexual harassment.  Golevski is able to recount complaints that she verbally gave to various supervisors about the issue but did not identify any specific comments or clearly indicate that any of the five individuals named in her complaint had made an offensive statement.  She also testified that she does not have any recollection of the time or date or even the season in which she informed her supervisors and the area President about the harassment she was experiencing.  Indeed, the only instance in the record where Golevski went to management with a clear harassment complaint against an individual, the offending employee was promptly fired.  Further, there *is* evidence that when Golevski's coworkers complained of specific issues of sexual harassment to Home Depot management, the offender, Steve Day, was immediately fired.

We therefore find that, even examining the evidence in the light most favorable to the plaintiff, Golevksi failed to present sufficient evidence that, upon learning of any specific alleged incidents of harassment, Home Depot failed to respond appropriately.  As such, we affirm the district

court's grant of summary judgment for Home Depot on Golevski's claim of sexual harassment under

the ELCRA.


### IV. Wrongful Termination Under the Family and Medical Leave Act

Golevski next asserts that Home Depot violated the FMLA by terminating her while she was

on a medical leave of absence.[2] The FMLA prohibits an employer from "discharg[ing] . . . any

individual for opposing any practice" made unlawful by the Act. 29 U.S.C. § 2615(a)(2). To

establish a claim that an employer has violated this provision, this court has determined that a

plaintiff must offer evidence showing:

> (1) she is an eligible employee, as defined in 29 U.S.C. § 2611(2);
>
> (2) defendants are an employer, as defined in 29 U.S.C. § 2611(4);
>
> (3) she was entitled to take leave for one of the reasons set forth in the FMLA under 29 U.S.C. § 2612(a)(1);
>
> (4) she gave notice of her intention to take leave, as required by 29 C.F.R. §§ 825.302-.303; and
>
> (5) defendants denied her benefits to which she was entitled under the FMLA.

*Cavin v. Honda of Am. Mfg.*, 346 F.3d 713, 719 (6th Cir. 2003) (citations omitted).

---

[2] The FMLA provides that an "eligible" employee is entitled to twelve weeks of unpaid leave from work "because of a serious health condition that makes the employee unable to perform the functions of [her] position." 29 U.S.C. § 2612(a)(1)(D). The term "serious health condition" is defined as an illness, injury, impairment, or physical or mental condition that involves either inpatient care in a hospital, hospice, or residential medical care facility, or continuing treatment by a health care provider. *Id.* §2611(11).

While there is some dispute over whether Golevski was entitled to take leave for the reasons stated in her medical excuses, again, this court's primary concern is whether she provided her employers with proper notice of her intention to take a leave of absence, as required by 29 C.F.R. §§ 825.302-.303.

The district court found that Golevski provided neither proper notice to Home Depot nor a qualifying reason for her absence. Although she notified her supervisors by phone of her medical excuse and submitted a doctor's note, Golevski was also informed by Home Depot that under company policy she must file the appropriate leave of absence forms and doctor certification. Golevski received, but did not return, the forms, even after a warning letter was sent from Home Depot that informed her that she was required to either return to work or submit the proper leave of absence forms. Golevski claims that her word alone should have been sufficient notice based upon her past practice of providing doctor's notes to excuse her absence.

This court has previously held that to invoke the protection of the FMLA, an employee must provide notice and a qualifying reason for requesting the leave, and that "nothing in the statute places a duty on an employer to affirmatively grant leave" without proper notice to the employer. *Brohm v. JH Props., Inc.*, 149 F.3d 517, 523 (6th Cir. 1998); *see also Cavin*, 346 F.3d at 713 (indicating that summary judgment is proper if the plaintiff "failed to give his 'employer enough information for the employer to reasonably conclude that an event described in the FMLA has occurred"). And, unlike the plaintiff in *Cavin*,[3] Golevski does not provide any explanation as to why

---

[3] Golevski's brief to this court relies heavily on the facts of *Cavin*, because the plaintiff in that case also did not follow all of the proper channels for notifying his employer of his medical

she did not follow through with Home Depot's request that she complete the proper paperwork to obtain a medical leave of absence.  As such, we agree with the district court that Golevski did not present sufficient evidence to indicate to a jury that she properly communicated the need for a medical absence to her employer "in any way that would have allowed the employer to react in cognizance of the fact that there was an FMLA responsibility."  J.A. at 2127.  Accordingly, we affirm the district court's grant of summary judgment for Home Depot on Golevski's FMLA claim.

### V. Conclusion

Because we are affirming both issues before us on this appeal, Golevski's request for our court to reassign the case to a different judge on remand is hereby moot.[4]    Accordingly, the judgment of the district court is hereby affirmed.

_____

leave.  That case is clearly distinguishable from Golevski's, however, as the plaintiff in *Cavin* was seriously injured in an automobile accident and was physically unable to complete all of the required forms.

[4] This court notes nonetheless that in making her allegation of bias against Judge O'Meara, Golevski failed to provide any federal law or actual evidence of personal bias against her or in favor of Home Depot that could amount to an abuse of discretion in support of her request.  At most, Judge O'Meara criticizes Golevski for unnecessarily including, in her brief to the court, "words and descriptions of sexual situations in a way that the Court can only conclude was meant to shock and disorient the Court, to distract it from the reason and impartiality which it has promised to bring to its work."  J.A. at 2109.  In reviewing Golevski's briefs to the lower court and to this court, we are inclined to agree with Judge O'Meara's assessment of Golevski's seemingly irreverent use of extremely vulgar language in describing the alleged actions of her harassers.