*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

NAJEE TUREE THOMPSON,

        Defendant-Appellant.

UNPUBLISHED
February 15, 2024

No. 362860
Jackson Circuit Court
LC No. 19-003456-FC

Before: LETICA, P.J., and CAVANAGH and SWARTZLE, JJ.

PER CURIAM.

Defendant, Najee Turee Thompson, appeals by right his convictions of first-degree criminal sexual conduct (CSC-I), MCL 750.520b; unlawful imprisonment, MCL 750.349b; and interference with an electronic communication device, MCL 750.540(5)(a). The trial court sentenced defendant as a second-offense habitual offender, MCL 769.10, to serve 25 to 50 years' incarceration for his conviction of CSC-I; 10 to $22^1/_2$ years' incarceration for unlawful imprisonment; and two to three years' incarceration for interference with an electronic communication device. The court ordered defendant to serve his sentence for CSC-I consecutive to his other sentences.

On appeal, defendant presents four arguments. First, defendant argues that the trial court erred by allowing the admission of testimony from six witnesses regarding defendant's other acts. Second, defendant argues that there was insufficient evidence to support his conviction of CSC-I. Third, defendant argues that there was insufficient evidence to support his conviction of unlawful imprisonment. Fourth, defendant argues that the trial court abused its discretion by imposing a consecutive sentence. These arguments are without merit, and thus, we affirm defendant's convictions and sentences.

## I. RELEVANT FACTS AND PROCEEDINGS

This case arises out of defendant's use of social media to elicit conversations with young women and obtain explicit photographs of them to use as a threat to obtain sex or financial gain. It was undisputed that defendant contacted the victim through social media, offering to pay money for her to send defendant nude photographs of herself. Defendant then used the photographs and

-1-

threatened to publicly post them online for the victim's friends and family to see if she did not agree to meet him in person. Defendant maintained that they agreed to have sex for money; however, there was evidence that the agreement changed—that defendant instead agreed that if the victim paid him $50, he would delete her photographs. Upon meeting defendant, the victim paid defendant $50, and defendant directed the victim to drive to a poorly lit parking lot at an abandoned school. Once parked, the victim reminded defendant that she had already paid him and asked him to delete her photographs. Defendant threatened to stab the victim and, in response, she attempted to escape by fleeing from the vehicle and called law enforcement.

Evidence was presented that defendant tackled the victim, took away her phone, and dragged her back to the vehicle; defendant repeatedly used force to overcome the victim as she repeatedly attempted to get away from defendant. Ultimately, defendant raped the victim. Defendant claimed that the sex was consensual per his agreement with the victim that he would pay her to have sex; however, the victim maintained that defendant forcibly sexually assaulted her. At trial, the trial court permitted the testimony of three other-acts witnesses who were also contacted by defendant on social media and offered money for explicit photographs and three police officers who investigated each of the other acts. Defendant was ultimately convicted and sentenced, as stated above. Defendant now appeals.

## II. OTHER-ACTS EVIDENCE

First, defendant argues that the trial court erred by admitting the testimony from the other-acts victims and the police officers associated with investigating each of the other acts. We disagree.

We review the trial court's decision to admit or exclude evidence for an abuse of discretion. *People v Herndon*, 246 Mich App 371, 406; 633 NW2d 376 (2001). "An abuse of discretion occurs when the trial court's decision falls outside the range of principled outcomes." *People v Olney*, 327 Mich App 319, 325; 933 NW2d 744 (2019) (quotation marks and citation omitted). "A trial court also necessarily abuses its discretion when it makes an error of law." *People v Al-Shara*, 311 Mich App 560, 566; 876 NW2d 826 (2015). "[A] trial court's decision on a close evidentiary question ordinarily cannot be an abuse of discretion." *People v Cameron*, 291 Mich App 599, 608; 806 NW2d 371 (2011) (quotation marks and citation omitted).

The Supreme Court limited the use of evidence concerning other crimes, wrongs, or acts under MRE 404(b)(1), which provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

MRE 404(b) does not establish a blanket prohibition against the introduction of other-acts evidence simply because the other-acts evidence may implicate character. Instead, the rule is one of

inclusion and allows for the admission of other-acts evidence for any relevant purpose other than to establish propensity and action in conformity therewith. *People v VanderVliet*, 444 Mich 52, 63-65; 508 NW2d 114 (1993), mod 445 Mich 1205 (1994). The rule prohibits the admission of other-acts evidence to establish propensity so as to avoid the danger of conviction on the basis of a defendant's history of misconduct. *People v Starr*, 457 Mich 490, 494-495; 577 NW2d 673 (1998). This Court has stated that the rule prohibits the use of propensity evidence "because it diverts a jury's attention from the facts of the case being tried and focuses it on the probability that the defendant, who has made so many mistakes before, made one again." *Wlosinski v Cohn*, 269 Mich App 303, 312; 713 NW2d 16 (2005).

When determining whether other-acts evidence may be admitted at trial consistent with MRE 404(b)(1), the trial court must first determine whether the proponent has offered the evidence for a proper purpose, meaning for something other than an improper character theory. *VanderVliet*, 444 Mich at 74. There are several relevant bases for the admission of other-acts evidence, such as: evidence may be admitted to prove "motive, opportunity, intent preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident . . . ." MRE 404(b)(1).

Next, the trial court must determine whether the proposed evidence is relevant under MRE 402, as enforced through MRE 104(b), to an issue or fact of consequence. *VanderVliet*, 444 Mich at 74. This requires close examination of the logical relationship between the evidence and the facts in issue. *People v Orr*, 275 Mich App 587, 589; 739 NW2d 385 (2007). Evidence will not be relevant if the proponent does not show that a reasonable jury could find that the person against whom the evidence was to be admitted actually performed the other acts. *People v McFarlane*, 325 Mich App 507, 530; 926 NW2d 339 (2018).

Third, the trial court must apply MRE 403 and determine whether the danger of unfair prejudice substantially outweighs the probative value of the other-acts evidence. *VanderVliet*, 444 Mich at 74-75. Other-acts evidence "is not admissible simply because it does not violate Rule 404(b)." *Id*. at 75. The proffered evidence would be unfairly prejudicial if it presents a danger that marginally probative evidence will be given undue or preemptive weight by the jury, *Elezovic v Ford Motor Co*, 259 Mich App 187, 207; 673 NW2d 776 (2003), rev'd in part on other grounds 472 Mich 408 (2005), or it would be inequitable to allow use of the evidence, *People v Waclawski*, 286 Mich App 634, 672; 780 NW2d 321 (2009). The determination whether the probative value of evidence is substantially outweighed by its prejudicial effect is best left to a contemporaneous assessment of the presentation, credibility, and effect of the testimony. *Id*. at 670.

Lastly, the trial court must, upon request, provide a limiting instruction consistent with MRE 105. *VanderVliet*, 444 Mich at 75. This Court has held that a trial court safeguards a defendant's rights when it instructs the jury on the proper use of other-acts evidence that was admitted at trial. *People v Roper*, 286 Mich App 77, 106; 777 NW2d 483 (2009).

In this case, the trial court permitted the admission of defendant's other-acts evidence to show a common intent, scheme, or plan. Evidence of misconduct similar to that charged is logically relevant to show that the charged act occurred if the uncharged misconduct and the charged offense are sufficiently similar to support an inference that they were manifestations of a

common plan, scheme, or system. *People v Sabin (After Remand)*, 463 Mich 43, 63; 614 NW2d 888 (2000). Remoteness in time of the other act relates to the weight of the evidence rather than its admissibility. *People v Brown*, 294 Mich App 377, 387; 811 NW2d 531 (2011). A "general similarity between the charged and uncharged acts does not, however, by itself, establish a plan, scheme, or system used to commit the acts," but "logical relevance is not limited to circumstances in which the charged and uncharged acts are part of a single continuing conception or plot . . . ." *People v Dobek*, 274 Mich App 58, 90; 732 NW2d 546 (2007) (quotation marks, citation, and alterations omitted). "There must be *such a concurrence of common features* that the charged acts and the other acts are logically seen as part of a general plan, scheme, or design." *People v Steele*, 283 Mich App 472, 479; 769 NW2d 256 (2009). "A high degree of similarity is required—more than is needed to prove intent, but less than is required to prove identity—but the plan itself need not be unusual or distinctive." *People v Smith*, 282 Mich App 191, 196; 772 NW2d 428 (2009).

"[A] defendant's general denial places all the elements of the charge at issue." *Sabin (After Remand)*, 463 Mich at 60. However, this "does not automatically render the other-acts evidence relevant in a particular case" because "[t]he trial court must still determine whether the evidence, under a proper theory, has a tendency to make the existence of a fact of consequence in the case more or less probable than it would be without the evidence." *Id.*, citing MRE 401.

In *People v Thurmond*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 361302); slip op at 4-7, this Court determined that testimony from two witnesses regarding the defendant's targeting of young, vulnerable women to engage them in prostitution and exploit them was admissible other-acts evidence that was relevant to the charged conduct in the case, i.e., inducing another person to become a prostitute, CSC-III, and human trafficking. This Court explained that the other-acts evidence, in addition to the victim's testimony that the defendant encouraged her to prostitute herself, "demonstrated that defendant employed a general scheme or pattern to target and abuse young, vulnerable women." *Id.* at ___; slip op 6. This Court further explained, stating that "[t]he other-acts witnesses described a similar pattern of defendant using enticements (e.g., promises, jobs, or money) to lure or recruit them to motels for purposes of prostituting or sexually exploiting them, and resorting to threats and violence if they refused." *Id.*

Similarly, defendant's interactions with the other women share sufficient common features with his interaction with the victim to enable a reasonable person to infer that defendant acted in accordance with a common scheme or plan. Using the same variety of usernames and social media platforms, defendant initiated communication with all the women asking for the same thing, i.e., explicit photographs. In each instance, defendant offered to pay approximately the same amount of money for each photograph sent and escalated his requests on the basis of how the victim responded and what she sent to defendant by asking for explicit photographs that included the victim's face or participating in video chats. However, defendant did not pay any of the women for their photographs. Instead, in all incidents, defendant ultimately threatened to publicly post the explicit photographs online and threatened that the victims' friends and families would see their nude photographs. Further, defendant asked to meet with two of the three other victims in person to have sex with him, at which time, defendant explained, he would delete their photographs. Unlike the victim in this case, the other women did not meet defendant in person and, as a result, defendant threatened to, and, in some instances did, publicly posted the explicit photographs. Because defendant's interactions with the other women shared sufficient common features with his interaction with the victim, the trial court did not abuse its discretion by

determining that the testimonies of the other women were offered for the proper purpose of establishing defendant's common plan or scheme.

Next, regarding MRE 402, "[r]elevance is a relationship between the evidence and a material fact at issue that must be demonstrated by reasonable inferences that make a material fact at issue more probable or less probable than it would be without the evidence." *People v Crawford*, 458 Mich 376, 387; 582 NW2d 785 (1998). It was clear that the issue whether the victim consented to the sexual intercourse was the key issue at trial and, throughout the trial, defendant and the prosecution presented contradictory evidence regarding whether the victim consented. To determine whether the victim consented, "the trier of fact must look to the attendant circumstances and the parties' behavior prior and subsequent to the act of intercourse." *People v Oliphant*, 399 Mich 472, 491; 250 NW2d 443 (1976). "It then becomes material to know whether defendant orchestrated those circumstances to give the appearance of consent and to make proof of nonconsent difficult." *Id*.

In this case, the other-acts evidence was relevant to the issue of consent. Defendant maintained that the victim consented to have sex with him in exchange for money. However, the other-acts evidence presented the jury with evidence to infer that defendant used a common scheme or plan in each situation to orchestrate the circumstances to give the appearance of consent before attempting to engage in nonconsensual acts. Despite the other women not meeting defendant in person, the other-acts evidence directly correlated with the exact same circumstances that led to the victim's decision to meet defendant. All three other women were messaged and requested to send defendant explicit photographs for money. All, including the victim, did so expecting to receive the agreed-upon compensation. Instead, defendant threatened to publicly humiliate the women unless they agreed to meet him. Defendant orchestrated the circumstances to make it seem like the women would be consenting to meet him for sex when, in actuality, they were being threatened if they did not comply. The victim succumbed to the pressure of the guise and was the only woman to meet defendant in person in an effort to get her photographs deleted. The common scheme illustrated by defendant's other acts was relevant to whether the victim consented. Therefore, the evidence was admitted for a proper purpose and was material and probative.

Lastly, the other-acts evidence was not unduly prejudicial to warrant exclusion under MRE 403. "Unfair prejudice may exist where there is a danger that the evidence will be given undue or preemptive weight by the jury or where it would be inequitable to allow use of the evidence." *Thurmond*, ___ Mich App at ___; slip op at 7. In this case, the testimony from the other-acts witnesses regarding defendant's relentless attempts to target young, vulnerable women to exploit them by promising to pay them money for explicit photographs and then ultimately use their photographs as a threat to meet them in person was highly probative of defendant's plan or scheme for his own personal sexual interests described by the victim. In fact, defendant even bragged about the significant number of women he had exploited in the past, which was clearly indicative of defendant's pattern and guise to trick and pressure women into meeting him for sex and/or money.

Further, the trial court provided a cautionary instruction, both during the presentation of the other-acts evidence and during final jury instructions, advising the jury on the limited use of the other-acts evidence, which mitigated any potential for unfair prejudice because jurors are presumed to follow their instructions. See *People v Ericksen*, 288 Mich App 192, 199-200; 793

NW2d 120 (2010). See also *Weeks v Angelone*, 528 US 225, 234; 120 S Ct 727; 145 L Ed 2d 727 (2000). Accordingly, the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. See *Thurmond*, ___ Mich App at ___; slip op a 7 (concluding that witness testimony regarding the defendant's plan or scheme to target young, vulnerable women by offering enticements for them to engage in prostitution or sexually assault them was not unfairly prejudicial).

The testimonies of each of the investigating officers were also presented for a proper nonpropensity purpose and relevant to show and corroborate defendant's common plan and scheme. The officers testified regarding defendant's association with the multiple social media platforms and usernames used during the other acts, which were identical with the platforms and usernames used in the charged offense. Further, the officers provided testimony regarding the context of defendant's messages with the other-acts witnesses, which included messages from defendant that were significantly similar to his communication with the victim that induced her to meet with defendant. These messages included: communication of defendant seeking nude photographs; defendant's offer for money for the photographs; defendant's specific use of short-hand acronyms and emojis; defendant's choice of insults, including language such as whore, slut, and morals; and defendant's threatening demeanor when the women became uncomfortable or upset that they did not receive their money. Each of the officers' testimonies was brief and limited to the factual details of their investigation of their specific, other-acts witness, including a recitation of the messages between the other-acts witnesses and defendant included in their police reports.

Analyzing prejudicial impact, the probative value outweighs any prejudicial impact because of similarity between the uncharged and charged acts, the duration of time between the uncharged and charged acts, the frequency of the behavior, the trial court's exclusion of numerous other acts, and the reliability of the evidence. The other acts were almost identical with the acts that led the victim to meet with defendant; two of the three other acts occurred within months, and one was within two years of the charged offense; the other acts were so frequent that defendant repeatedly bragged about how often he had done it to various other women; the prosecution sought to introduce additional acts, but the trial court excluded that evidence, thereby minimizing additional prejudicial impact; the evidence was reliable on the basis of the officers' investigations to identify that defendant was associated with the various usernames and the attestation that actual reports were made by each other-acts witnesses; and the other-acts evidence was necessary to show why the victim was meeting defendant in the first place after defendant maintained that the victim consented to the encounter. Therefore, the trial court did not abuse its discretion by admitting the officers' testimonies.

## III. SUFFICIENCY OF THE EVIDENCE

Defendant argues that there was insufficient evidence to support his convictions on the counts of CSC-I and unlawful imprisonment. We disagree.

We review a challenge to the sufficiency of the evidence by reviewing the evidence de novo. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). We review the evidence "in the light most favorable to the prosecution to determine whether a rational trier of

fact could have found the essential elements of the crime to have been proved beyond a reasonable doubt." *Id*. See also *Jackson v Virginia*, 443 US 307, 324; 99 S Ct 2781; 61 L Ed 2d 560 (1979).

When reviewing challenges to the sufficiency of the evidence, we must not interfere with the fact-finder's role in deciding the weight and credibility to give to a witness's testimony; we may not "determine the credibility of witnesses . . . , no matter how inconsistent or vague that testimony might be." *People v Mehall*, 454 Mich 1, 6; 557 NW2d 110 (1997). See also *People v Lemmon*, 456 Mich 625, 646-647; 576 NW2d 129 (1998) (stating that when the question is one of "credibility posed by diametrically opposed versions of the events in question," courts must leave the test of credibility with the trier of fact).

"Circumstantial evidence and the reasonable inferences that arise from that evidence can constitute satisfactory proof of the elements of the crime." *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999) (quotation marks and citation omitted). We must consider all the inferences that can be fairly drawn from the evidence when considering the sufficiency of the evidence because, when evidence is relevant and admissible, "it does not matter that the evidence gives rise to multiple inferences or that an inference gives rise to further inferences." *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). In such cases, it is for the fact-finder alone to "determine what inferences may be fairly drawn from the evidence and determine the weight to be accorded [to] those inferences." *Id*. In a criminal case, due process requires that a prosecutor introduce evidence sufficient to justify a rational trier of fact in finding guilt beyond a reasonable doubt. *People v Wolfe*, 440 Mich 508, 513-514; 489 NW2d 748, amended 441 Mich 1201 (1992).

In this case, defendant was charged with CSC-I under two theories, i.e., MCL 750.520b(1)(c) and (1)(f).

### A. MCL 750.520b(1)(c)

The first theory that supported defendant's charge of CSC-I was MCL 750.520b(1)(c), which provides:

> (1) A person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person and if any of the following circumstances exists:
>
> * * *
>
> (c) Sexual penetration occurs under circumstances involving the commission of any other felony.

In this case, the jury found defendant guilty of unlawful imprisonment in addition to his charge for CSC-I. The plain language of the CSC-I statute requires "the prosecution to prove that (1) sexual penetration occurred and (2) it occurred under circumstances involving the commission of any other felony," i.e., unlawful imprisonment in this case. *People v Lockett*, 295 Mich App 165, 174-175; 814 NW2d 295 (2012) (quotation marks and citation omitted). This means that a jury must find that all the elements of unlawful imprisonment were proven, beyond a reasonable doubt, to find a defendant guilty of CSC-I predicated on the unlawful imprisonment of a person. Therefore,

if there was sufficient evidence for the jury to find defendant guilty of unlawful imprisonment, then defendant's conviction of CSC-I under MCL 750.520b(1)(c) would be properly supported.

There must be a "sufficient nexus between the other felony and the sexual penetration; specifically, there must be a direct interrelationship between the felony and the penetration." *Id.* at 175 (quotation marks and citation omitted). MCL 750.349b(1)(c) provides:

> (1) A person commits the crime of unlawful imprisonment if he or she knowingly restrains another person under any of the following circumstances:

> \* \* \*

> (c) The person was restrained to facilitate the commission of another felony or to facilitate flight after commission of another felony.

Regarding the definition of "restraint," the statute provides:

> (a) "Restrain" means to forcibly restrict a person's movements or to forcibly confine the person so as to interfere with that person's liberty without that person's consent or without lawful authority. The restraint does not have to exist for any particular length of time and may be related or incidental to the commission of other criminal acts. [MCL 750.349b(3)(a).]

In this case, there was evidence that the victim initially arranged to meet defendant to have sex in exchange for money and/or for defendant to delete the photographs that she had sent to him upon defendant's threats that he would expose her photographs to her friends and family. Social media messages supported that the victim did not want to meet defendant to have sex but that she felt that she had no other option. Specifically, the victim clarified their agreement before meeting defendant, stating, "And then I said so when I get there, you're going to delete the pictures, we're going to have sex and then you're going to pay me and I'm going home, correct?" Subsequently, the conversation proceeded, and the victim and defendant agreed that, if she gave defendant $50, then he would delete her photographs and that she no longer had to have sex with him. The victim sought further clarification as to why defendant was "letting [her] off" regarding her agreement to have sex with defendant, and he stated, "Because money is more valuable than a quick nut to me, I don't know either way you're still pulling up to get that shit deleted so I mean" and "You can pay if you want and still get everything deleted."

Further evidence was presented that, upon meeting defendant, the victim gave defendant the agreed-upon $50 and asked him to delete her photographs. Instead, defendant took the money, entered her vehicle, and told her to drive to an abandoned school. Once at the school, the victim reminded defendant that she had paid, but defendant threatened to stab her. The victim immediately fled from the vehicle and attempted to call the police. The victim testified that she screamed as she ran away from the vehicle, and her screaming was corroborated by the additional calls made to law enforcement by nearby neighbors and the victim's raspy voice documented by medical staff. During the victim's call to law enforcement, defendant tackled her, took her phone, and dragged and punched her as she attempted to run away. Evidence was presented that, during her struggle, the victim lost her phone, Apple watch, and glasses, which was corroborated by the

-8-

officer's testimony that the watch and glasses were located on the ground at the scene and by a nearby neighbor's testimony that she found the victim's phone on a sidewalk at a different location than the scene of the incident.

Evidence was presented that defendant attempted to rip off the victim's pants, to which she eventually complied after being exhausted from attempting to escape. After, the victim described that defendant pushed her against her vehicle, allegedly forced her to her knees placing his penis in her mouth, and then forced her into the vehicle removing her pants and underwear. At that time, defendant sexually assaulted the victim. The trial court was presented with additional evidence that corroborated the victim's testimony, including the victim's immediate running to the responding officer at the scene in a "disheveled" state and reporting that she was raped and the bodycam footage corroborating the officer's testimony. Additionally, evidence was presented of the victim's multiple documented injuries on her foot, knee, ankle, ear, shoulder, and elbow. Further, evidence was presented that defendant fled the scene on foot upon the arrival of law enforcement and that $50 in the same denominations that the victim paid defendant were found in defendant's belongings.

The victim was restrained in some capacity from the point that defendant took her money, entered her vehicle, and demanded that she drive away from the address where she agreed to meet him. Significant evidence was presented that the victim was scared and was uncertain how to abandon the situation in which her fear escalated when defendant threatened to stab her. Subsequently, as the victim attempted to escape, defendant used force to physically restrain her from leaving the scene of the assault by physically assaulting her, i.e., tackling her, dragging her back to her vehicle, taking her phone thereby preventing her from being able to successfully escape the situation, and then forcibly removing her clothes and assaulting her against her will. Although evidence was introduced that the victim had initially agreed to have sex with defendant and that, if defendant did not pay her, then she would "cry rape," the jury was also presented with significant evidence to the contrary.

Although some evidence conflicts with the victim's testimony, all conflicts in the evidence are resolved in favor of the prosecution. *People v Unger*, 278 Mich App 210, 222; 749 NW2d 272 (2008). Further, we will not "interfere with the jury's determinations regarding the weight of the evidence and the credibility of the witnesses." *Id*. Accordingly, there was sufficient evidence for a jury to find that the victim's movements were forcibly restricted and that she was held against her will which interfered with her freedom of movement. Additionally, there was sufficient evidence presented for a jury to find that defendant restrained the victim to facilitate the commission of a separate felony, i.e., criminal sexual conduct. Therefore, there was sufficient evidence to support defendant's conviction of unlawful imprisonment.

Addressing the CSC-I charge, it was uncontested that sexual penile penetration occurred; therefore, there was sufficient evidence for a jury to find that defendant engaged in sexual penetration with the victim. Further, as previously discussed, there was sufficient evidence that the sexual penetration occurred under the circumstances involving the commission of another felony, i.e., unlawful imprisonment. Therefore, there was sufficient evidence to support defendant's convictions of CSC-I and unlawful imprisonment.

## B.  MCL 750.520b(1)(f)

The second theory that supported defendant's charge of CSC-I was MCL 750.520b(1)(f). To support a conviction of CSC-I under MCL 750.520b(1)(f), the prosecution must establish beyond a reasonable doubt that the defendant used force or coercion to engage in sexual penetration with another person and caused personal injury.  *People v Crippen*, 242 Mich App 278, 282; 617 NW2d 760 (2000).  Force or coercion includes:

> (*i*) When the actor overcomes the victim through the actual application of physical force or physical violence.

> (*ii*) When the actor coerces the victim to submit by threatening to use force or violence on the victim, and the victim believes that the actor has the present ability to execute these threats.

> (*iii*) When the actor coerces the victim to submit by threatening to retaliate in the future against the victim, or any other person, and the victim believes that the actor has the ability to execute this threat.  As used in this subdivision, "to retaliate" includes threats of physical punishment, kidnapping, or extortion.

> (*iv*) When the actor engages in the medical treatment or examination of the victim in a manner or for purposes that are medically recognized as unethical or unacceptable.

> (*v*) When the actor, through concealment or by the element of surprise, is able to overcome the victim.  [MCL 750.520b(1)(f)(*i*)-(*v*).]

Analyzing MCL 750.520b(1)(f)(*i*), our Supreme Court has determined that "when a victim refuses to engage in sexual activities and the defendant ignores the refusal and penetrates the victim anyway, sufficient evidence exists to satisfy the force or coercion requirement."  See *People v Carlson*, 466 Mich 130, 135; 644 NW2d 704 (2002) (quotation marks and citation omitted).  The requisite force or coercion is that which "allow[s] the accomplishment of sexual penetration when absent that force the penetration would not have occurred."  *Id*. at 140.  As previously discussed, defendant overcame the victim through the application of physical force and violence when he proceeded to chase her as she ran away from her vehicle, tackle her, and drag her back to the vehicle.  Evidence was presented that defendant repeatedly tackled the victim as she attempted to get away from defendant multiple times and attempted to rip off her pants during her attempted escape.  Further, evidence was presented that defendant eventually pushed the victim against the vehicle and ripped off her pants and underwear until she was ultimately forced to comply with defendant's demands because of fear and exhaustion from attempting to escape.  The victim's testimony was corroborated by the multiple injuries that she sustained during the altercation, the belongings that she lost during her attempted escape, and her repeated screaming for help.  Accordingly, sufficient evidence was presented for a jury to convict defendant of CSC-I under the prosecution's alternative theory.

## IV. CONSECUTIVE SENTENCING

Defendant argues that the trial court abused its discretion by imposing a consecutive sentence and that the trial court failed to articulate its rationale for the consecutive sentence. We disagree.

In Michigan, a consecutive sentence cannot be imposed in the absence of statutory authority. *People v Clark*, 315 Mich App 219, 224; 888 NW2d 309 (2016). "Therefore, whether a trial court may impose consecutive sentences is a question of statutory interpretation, which is reviewed de novo." *Id*. "[W]hen a statute grants a trial court discretion to impose a consecutive sentence, the trial court's decision to do so is reviewed for an abuse of discretion, i.e., whether the trial court's decision was outside the range of reasonable and principled outcomes." *People v Norfleet*, 317 Mich App 649, 654; 897 NW2d 195 (2016).

However, because defendant failed to preserve the issue, we review the issue for plain error affecting his substantial rights. See *People v Perry*, 317 Mich App 589, 600; 895 NW2d 216 (2016). Unpreserved constitutional and nonconstitutional errors are reviewed for plain error affecting the defendant's substantial rights. *Carines*, 460 Mich at 763. The defendant bears the burden of establishing that the error occurred, that it was plain, and that it affected his or her substantial rights. *People v Jones*, 468 Mich 345, 355; 662 NW2d 376 (2003). Finally, even if the defendant establishes the first three elements of the plain-error test, "reversal is only warranted if the error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity or public reputation of judicial proceedings . . . ." *People v Shafier*, 483 Mich 205, 220; 768 NW2d 305 (2009) (quotation marks and citation omitted).

In Michigan, concurrent sentencing is the norm. See *People v Ryan*, 295 Mich App 388, 401; 819 NW2d 55 (2012) (citation omitted). A trial court cannot impose consecutive sentences unless authorized by the Legislature. See *People v Chambers*, 430 Mich 217, 222; 421 NW2d 903 (1988). MCL 750.520b(3) provides that "[t]he court may order a term of imprisonment imposed under this section to be served consecutively to any term of imprisonment imposed for any other criminal offense arising from the same transaction." This means that MCL 750.520b(3) authorizes a court to impose a CSC-I sentence to run consecutively to a sentence imposed for another criminal offense arising from the same transaction. *Ryan*, 295 Mich App at 401.

When the Legislature has authorized, but not mandated, consecutive sentencing, the trial court must articulate its rationale for its decision to impose consecutive sentencing, and the rationale must be sufficiently particularized to permit appellate review. See *Norfleet*, 317 Mich App at 664-665. The trial court cannot speak in "general terms" regarding a "defendant's background, his history, [and] the nature of the offenses involved." *Id*. at 666 (quotation marks omitted; alteration in original). Instead, a trial court must "give particularized reasons—with reference to the specific offenses and the defendant—to impose each sentence" to ensure that the use of consecutive sentences "is reserved for those situations in which so drastic a deviation from the norm is justified." *Id*. at 665-666.

In this case, when imposing defendant's sentence, the trial court explained that, according to the presentence investigation report, defendant had exceeded the sentencing guidelines and that the trial court had to individualize a sentence for defendant. The trial court referred to defendant's

young age and his extensive criminal history, including two prior felonies and seven misdemeanors. The trial court emphasized defendant's recent probation for another case in which defendant "repeatedly failed to adhere to tether requirements by disregarding every aspect of tether rules and expectations," pointing out that defendant failed to adhere to anything that he was supposed to. Referring to defendant's sentence for his probation violations, the trial court stated that "obviously that was a mistake under the circumstances by both you and whoever imposed that sentence in this matter."

Referring to the presentence report, the trial court emphasized that defendant clearly posed a significant risk to the community on the basis of his lack of regard for other people's privacy and safety. The trial court referred to defendant's other-acts evidence and defendant's extortion of various young women including defendant's own statement in the presentence report that one woman was the "twenty-third woman" that defendant had been involved with. The trial court then referred to the charged offenses and discussed the charges in detail referring to the testimonial evidence that was introduced at trial and how the jury found that defendant's acts were forceful. Referring to the charged offenses, the trial court stated:

> You're before the court as a result of the activities of October 8th, 2019. The Sheriff's Department responded to the old unused elementary school in Summit Township from which area several calls had been made by citizens to the 911 reporting a female screaming. This is the early morning hours as I remember, six-thirty, seven o'clock, something like that. Officers respond and come into contact and pulling into the parking area which is a little bit off the regular road and apparently behind the building, *which would be secluded*. Come into contact with [the victim], who is eighteen years old, running towards them and ultimately telling the officer that *she'd been raped*. The officer observes a black male, turns out to be you running in the opposite direction. And they're able to follow up on that and they come into contact and waiting outside your home apparently. And you come out, you're wearing different clothes, you obviously had changed clothes for whatever reason, and you're taken into custody here. Your keys were found in her vehicle, she had picked you up at your direction or request earlier that morning with the—and then we have a difference of opinion I guess as to what it is that the reason was that she's there. Her story is that you had agreed for fifty dollars to return compromising photographs that you had of her or took, take them off the computer as the case may be. So she came here with the fifty dollars in order to do that. Your side of the story is that, that you were going or had offered money and she was going to perform a sexual acts for money in this matter. Some type of act of prostitution. I think as I read in the pre-sentence report and as I remember I believe from the testimony at the time of the trial that indeed when the police go in and I think pursuant to a search warrant and search your room here in residence they do find money of the same denomination as the fifty dollars that she said she had brought and given to you. *And of course her story is once you got the fifty dollars nope, we're still going to have sex and the various acts that take place. She's held against her will, she tries to make a call to 911 as indicated by the prosecutor, you snatch up the phone. You take it with you obviously threw it away somewhere between there and your residence and it's found by another citizen who brings it to the attention of the police under the circumstances here. These are forceful acts,*

*appear to be thought out acts by the Court when I read what took place and recall the testimony at the time of trial.* I can't quibble with the decision of the jury. . . . [Emphasis added.]

The trial court considered defendant's adult criminal record and his recent revocation of probation, explaining that defendant received a great plea agreement but still failed to successfully comply. Further, the trial court referred to another sentence for intentional dissemination of sexually explicit material in which defendant was also given a delayed sentence option; however, defendant failed to comply with that probation.

The trial court further explained:

[Defendant] obviously learned nothing in the matter. I guess it's on page three, I made a—a note to myself page three of the Ingham County pre-sentence report where [other-acts witness] indicated that [defendant] had indicated to her that she was your twenty-second victim on this extortion plot that you have about obtaining some type of nude or compromising pictures and then threats are made to do this, that, or the other or I'm going to publish. Obviously, this is a matter that's taken place over a long period of time. You don't learn as we go along here and it's just one thing after the, another. And it looks like just what I know from the trial and looking at the pre-sentence report that the victims in this matter have problems of their own. And it looks like you're able to capitalize on—on those problems and take advantage of them, which I believe maybe consistent with what you had indicated to the pre-sentence writer. I'm looking at page one, the defendant reports his own strength's to be his communication skills. Stating that he's good with conversation and articulating himself. Apparently, you are because you're talking these women into numerous different things that obviously snowball and get them into other situations.

\* \* \*

*It's clear to the court that you're a predator who clearly as indicated poses a significant risk to the community, numerous victims, cannot or will not stop your predatory behavior, which only appears to the Court to be getting worse.* You know now we're here on a criminal sexual conduct, a rape case. [Emphasis added.]

The trial court presented adequate reasons to justify its decision to impose the sentence for CSC-I consecutively to the sentences for the other convictions. The trial court specifically noted that the victim was sexually assaulted and that the circumstances surrounding the sexual assault involved extortion, seclusion, being held against her will, and force. Further, the trial court indicated the victim's desperate running toward law enforcement and immediate disclosure that she had been raped upon the officer's arrival. Additionally, the trial court described defendant's criminal history, defendant's previous failure with lenient sentencing, and defendant's significant progression from extortion to sexual assault.

MCL 750.520b(3) grants the trial court the authority to impose a consecutive sentence and the only requirement is that the trial court provide an adequate explanation so that appellate courts

can determine if the trial court's actions fell within a range of reasonable and principled outcomes. See *Norfleet*, 317 Mich App at 664-666. We conclude that the trial court did not abuse its discretion by imposing a consecutive sentence.

Affirmed.

/s/ Anica Letica
/s/ Mark J. Cavanagh
/s/ Brock A. Swartzle